S12A1001. WETHERINGTON v. WETHERINGTON.
(732 SE2d 433)

NAHMIAS, Justice.

We granted Husband's application for discretionary appeal to consider whether the trial court erred in determining Husband's child support obligation in ruling on his petition for downward modification of child support. As explained below, the trial court did err in this respect. Husband raises two other issues, only one of which has merit, so we affirm the trial court's judgment in part, reverse it in part, and remand for redetermination of child support.

1. R. Edward Wetherington (Husband) and Elizabeth L. Wetherington (Wife) entered into a settlement agreement in October 2007, which was incorporated into the final decree of their divorce filed on January 15, 2008. The settlement agreement said that Husband's "gross annual income is approximately $300,000," while Wife's is "approximately zero," and he agreed to pay $7,000 per month in child support for the parties' two children (with the amount decreasing when the oldest child turned 18). The parties also agreed that they

would evenly share the financial obligations associated with their ownership interest in a vacation condominium. In the divorce decree, the trial court found that Husband's gross monthly income was $25,000, which, with no adjustments, lead to a presumptive child support amount of $2,884 per month. See OCGA § 19-6-15 (o) (setting forth the schedule of basic child support obligations based on adjusted gross income). However, the court imposed the $7,000 per month obligation from the settlement agreement, explaining that it was deviating from the presumptive amount based on the parties' agreement, which the court found was in the best interests of the children. See OCGA § 19-6-15 (c) (6) (providing that the parties may enter "into an enforceable agreement contrary to the presumptive amount of child support which may be made the order of the court pursuant to review by the court of the adequacy of the child support amounts negotiated by the parties").

On October 15, 2008, Husband filed a petition for downward modification of child support based on an alleged material reduction in his income. In April 2009, the trial court temporarily reduced Husband's obligation to $5,950 per month. In April 2010, Husband amended his modification petition to add a count for contempt, alleging that Wife had not paid her share of expenses for the vacation condominium as required under the settlement agreement and divorce decree. In June 2010, Wife filed a motion for contempt against Husband based on his alleged failure to pay his full child support obligation.

At the February 21, 2011, final hearing on the modification and contempt actions, Husband, who is a certified public accountant, testified that in October 2007, the local CPA firm for which he worked merged with a national firm. He said that his $300,000 annual income listed in the settlement agreement consisted of a $60,000 signing bonus that he received in the fall of 2007, a $180,000 salary for 2008, and a $60,000 performance bonus for 2008 if his group met its revenue targets. In year two of his contract with the national firm, he was to receive a $210,000 salary, with the possibility of a $90,000 performance bonus. The parties agree that in May 2008, Husband realized that his income would be significantly less than $300,000, and his 2008 gross annual income was actually $183,213.60. In 2009, Husband earned $219,267, but he lost his job with the national firm in October 2009. In late 2009, he accepted a new job that began in January 2010, earning $152,388 per year or $12,699 per month. Husband testified that he did not expect to earn more in 2011 than he did in 2010 and that his present income did not enable him to pay even $5,950 per month in child support.

When Husband was testifying about Wife's unpaid share of the condominium expenses, she stipulated that the amount at issue was $28,806.62. Wife testified that Husband paid his child support obligation until November 2010, at which time he unilaterally reduced the payment from the required $5,950 per month to $3,000 per month.

On August 11, 2011, the trial court entered an order on the modification and contempt actions. The court found that Husband "agreed to the deviation set out in the [Settlement] Agreement and is bound by his actions," but said it would give Husband "credit for his actual 2007 income of $240,000.00 instead of 300,000.00" and then concluded that, because $240,000 is 80% of $300,000, Husband's "child support shall be adjusted to 80% of $7,000.00 or $5,600.00 per month." The court also found that Husband was in contempt for failing to pay $11,800 in child support and provided that he could purge himself of the contempt by paying Wife $655.55 per month for 18 months. Finally, the trial court held Wife in contempt for her failure to pay her share of the condominium expenses, finding that "the amount owed by [Wife] to [Husband] is $19,200.00 as of February 21, 2011," and providing that she could purge herself of the contempt by paying Husband $650 per month until the $19,200 is paid in full.

We granted Husband's application for discretionary appeal, and he filed a timely notice of appeal.

2. (a) Husband contends that the trial court erred in failing to consider whether there had been a substantial change in his financial circumstances between the time of the divorce decree and the modification hearing and in failing to apply the child support guidelines of OCGA § 19-6-15 in calculating the new amount of his child support obligation. We agree.

OCGA § 19-6-15 (k) (1) authorizes a parent to petition for modification of a child support award if "there is a substantial change in either parent's income and financial status or the needs of the child." The statute then says:

> In the hearing upon a petition for modification, testimony may be given and evidence introduced relative to the change of circumstances, income and financial status of either parent, or in the needs of the child. After hearing both parties and the evidence, the court may modify and revise the previous judgment, in accordance with the changed circumstances, income and financial status of either parent, or in

the needs of the child, if such change or changes are satis-factorily proven so as to warrant the modification and revi-sion and such modification and revisions are in the child's best interest.

OCGA § 19-6-15 (k) (4).

We have explained that "[t]he showing of a change in [the parent's] financial status or a change in the needs of the child . . . is a threshold requirement" in a modification action. *Wingard v. Paris*, 270 Ga. 439, 439 (511 SE2d 167) (1999). If the trial court determines that there has been such a change, the court must then enter a "written order specifying the basis for the modification . . . and shall include all of the information set forth in paragraph (2) of subsection (c) of this Code section," OCGA § 19-6-15 (k) (4), which includes application of the statutory child support guidelines.[1] In addition, OCGA § 19-6-15 (c) (1) provides:

> The child support guidelines contained in this Code section are a minimum basis for determining the amount of child support and shall apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent. This Code section shall be used when the court

---

[1] OCGA § 19-6-15 (c) (2), the statutory provision referenced in OCGA § 19-6-15 (k) (4), says in relevant part that the trial court's order shall:

(A) Specify in what sum certain amount and from which parent the child is entitled to permanent support as determined by use of the [child support] work-sheet;

. . .

(C) Include a written finding of the parent's gross income as determined by the court or the jury;

. . .

(E) Include written findings of fact as to whether one or more of the deviations allowed under this Code section are applicable, and if one or more such deviations are applicable as determined by the court or the jury, the written findings of fact shall further set forth:

(i) The reasons the court or the jury deviated from the presump-tive amount of child support;

(ii) The amount of child support that would have been required under this code section if the presumptive amount of child support had not been rebutted; and

(iii) A finding that states how the court's or the jury's application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support and how the best interest of the child who is subject to the child support determination is served by deviation from the presumptive amount of child support.

enters a temporary or permanent child support order in a contested or noncontested hearing . . . .

Thus, if the trial court finds a change in a parent's financial circumstances warranting modification of a child support award, the court must "reconsider the amount of child support" using the child support guidelines. *Wingard*, 270 Ga. at 440.

As this court has recognized, the child support guidelines apply not only to initial determinations of child support, but also to modification actions, and are the expression of the legislative will regarding the calculation of child support and must be considered by any court setting child support.

Id. (citations and punctuation omitted). Accord *Stowell v. Huguenard*, 288 Ga. 628, 628-629 (706 SE2d 419) (2011).

The trial court in this case did not address whether there had been a change in the financial circumstances of Husband or the needs of the children since the original child support award in January 2008, and the court did not use the child support guidelines in calculating Husband's modified child support obligation. Instead, the court ruled that Husband was "bound" by the terms of the parties' October 2007 settlement agreement, but with the substitution of $240,000 in income for the $300,000 specified in the agreement and found by the trial court in the final divorce decree, based on Husband's "actual 2007 income,"[2] and with the new child support obligation set at 80% of the original $7,000. If Husband's financial status had not substantially changed, then no modification was appropriate. If modification was appropriate, then the court was required to use the child support guidelines to calculate the new amount.

(b) Wife concedes that the trial court's order does not comply with Georgia law, but she suggests two reasons why it was appropriate for the trial court not to follow the statutory scheme of first determining whether there had been a change in Husband's financial circumstances and, if so, then applying the child support guidelines to

---

[2] The trial court's order says that Husband "testified at trial that his actual projected 2007 income was $240,000." Husband actually testified that the $300,000 that the divorce decree and settlement agreement referenced were based on his contract with the national CPA firm that was to begin in January 2008, part of which including a signing bonus of $60,000 that he was paid in late 2007. Thus, the $300,000 to which Husband testified was not for calendar year 2007. Nevertheless, once it becomes final, a divorce decree that contains a finding of a parties' income is binding on the parties. See *Hulett v. Sutherland*, 276 Ga. 596, 597 (581 SE2d 11) (2003).

determine his new payment amount. First, Wife contends that Husband was estopped from seeking to lower his child support obligation because, pursuant to the settlement agreement, she refinanced the marital home and a vehicle and put those loans in her name alone in reliance on his agreement to pay $7,000 a month in child support. But divorce decrees, whether they are based on settlement agreements or bench or jury trials, generally include financial obligations for both parties. The General Assembly nevertheless has granted the parties to all divorce actions the statutory right to petition to modify a child support award — premising that right on "a substantial change in either parent's income and financial status or the needs of the child" and limiting it further by the provision that, after the date of the final order on a parent's modification action, the parent may not file another modification petition for two years. See OCGA § 19-6-15 (k) (1), (2); *Bagwell v. Bagwell*, 290 Ga. 378, 379 (721 SE2d 847) (2012). See also OCGA § 19-6-19 (a) (providing for modification of alimony awards).

A party may be "estopped" from seeking to lower his child support obligation only by expressly and specifically agreeing to waive the right to modify that the law grants. See *Dean v. Dean*, 289 Ga. 664, 664 (715 SE2d 72) (2011). This Court has long held that, for there to be a valid waiver of the statutory right to seek a downward modification of child support, the parties' agreement must " 'expressly waive[ ] the right of modification by referring specifically to that right; the right to modification will be waived by agreement of the parties only in very clear waiver language which refers to the right of modification.' " Id. (quoting *Varn v. Varn*, 242 Ga. 309, 311 (248 SE2d 667) (1978)).

By saying that Husband was "bound" by the settlement agreement, the trial court here appears to have ruled that Husband waived his right to modify. However, the settlement agreement contains no express waiver specifically referring to the right to modification, and Husband's mere agreement to pay more than the presumptive amount of child support cannot constitute a valid waiver of his statutory right to seek modification of his child support obligation under the appropriate circumstances. See *Dean*, 289 Ga. at 664-665 (holding that an agreement which provided that husband's child support obligation would be calculated each year based on his salary income and that the annual recalculation could not result in husband paying less than $2,290 per month did not constitute a waiver of his right to modify child support, because the agreement did not mention "waiver" and did not expressly reference the right of child support modification).

Wife also argues that, because Husband prepared the draft modification order for the trial court, which the court then issued,

Husband induced the error in the court's ruling. See *Dyals v. Dyals*, 281 Ga. 894, 896 (644 SE2d 138) (2007) (explaining that an appellant " 'cannot complain of error induced by his conduct' " (citation omitted)). Here, however, the trial court sent Husband's counsel a letter stating that "the ruling of the court" in the case was attached and directing counsel to "reduce these findings to a proper order and forward for signature." The court's letter attached two pages of detailed findings, which Husband's counsel incorporated into the draft order. Because Husband was simply following the trial court's express rulings and direction in preparing the order, it cannot be said that he induced the error in question.

(c) For these reasons, the trial court erred in failing to determine whether there had been a change in Husband's financial circumstances since the original child support award that would warrant a modification of child support pursuant to OCGA § 19-6-15, instead ruling that Husband was "bound" by the child support provision of the settlement agreement, and in not calculating any modification that was required based on the parties' current financial circumstances and the child support guidelines. Accordingly, we reverse the child support award made in the judgment and remand the case for the trial court to determine whether there has been a substantial change in circumstances meriting a modification and, if so, what child support award is appropriate under the guidelines, with any deviations supported by the required written findings.

3. Husband contends that the trial court erred in finding that the amount Wife owed him for failing to pay her share of the condominium expenses as required by the divorce decree was "$19,200.00 as of February 21, 2011." We agree. This Court will set aside the trial court's factual findings only if they are clearly erroneous, *Autrey v. Autrey*, 288 Ga. 283, 284 (702 SE2d 878) (2010), but that is the case here. The only evidence on this issue admitted at the hearing — evidence to which Wife stipulated — was that she owed Husband $28,806.62 as her share of the condominium expenses at the time of the contempt hearing on February 21, 2011. Accordingly, we must conclude that the trial court clearly erred in finding that the amount Wife owed was only $19,200 as of that date. We note that $19,200 was instead the amount that Husband had alleged he was owed when he filed his amended complaint six months earlier, in August 2010.

4. Husband contends that the trial court erred in holding him in contempt for failing to pay child support, because his financial circumstances made him unable to pay either the $7,000 per month awarded in the divorce decree or the $5,950 per month awarded by the temporary order. However, a trial court has broad discretion in determining if a party is in contempt of one of its orders. See *Hunter*

*v. Hunter*, 289 Ga. 9, 11 (709 SE2d 263) (2011). Here, the evidence showed that Husband had significant income at all times and was able to pay $7,000 per month under the divorce decree until April 2009 and $5,950 per month under the temporary order from April 2009 through October 2010. We cannot conclude that the trial court abused its discretion in finding that Husband also had the ability to pay the $5,950 amount from November 2010 until the time of the final hearing in February 2011 and willfully failed to do so.

*Judgment affirmed in part and reversed in part, and case remanded with direction.*

DECIDED OCTOBER 15, 2012.

*McNally, Fox, Grant & Davenport, Patrick J. Fox*, for appellant. *Connell & Wheeler, Alan W. Connell*, for appellee.