**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 4, 2019**

# In the Court of Appeals of Georgia

A19A0730. SELVAGE v. FRANKLIN.

BROWN, Judge.

Franklin Selvage ("the father") appeals the trial court's order denying his petition to modify custody, child support, and visitation. He contends that the trial court erred in (1) denying him any visitation; (2) refusing to adopt less extreme visitation provisions pursuant to OCGA § 19-9-7; (3) failing to enter a child support award pursuant to OCGA § 19-6-15 and to incorporate a child support worksheet or addendum into the final order; and (4) failing to incorporate a permanent parenting plan into the final order. For the reasons that follow, we vacate the order and remand the case with direction.

The record shows that the father was involved in a romantic relationship with Latrina Franklin ("the mother") when she became pregnant. The father did not want

the child and was not present for the birth in 2008. The father had no contact with either the mother or the child until the mother contacted him in 2009, needing a place to stay after a disagreement with her mother. The mother, the child, and the mother's older child from a different relationship stayed with the father for a week until an incident occurred, leading to the arrest of the father. The father pleaded guilty to family violence battery and third degree cruelty to children for committing acts of domestic violence against the mother in the presence of both of her minor children.[1] As a condition of his probation, the father was ordered to have no contact with the mother or her minor children.

In 2011, the father violated the no-contact condition of his probation by leaving a letter in the mother's mailbox, and as a result, the mother was granted a twelve-month family violence protective order on February 14, 2012. The protective order prohibited the father from having any contact with the mother and her two children. On September 21, 2012, the father was charged with violating the family violence protective order, and his probation stemming from the 2010 charges was revoked

---

[1] Throughout the trial, the pleadings, and the parties' briefs on appeal, both parties have stated that the father entered a guilty plea to the charges. However, the final disposition indicates that a bench trial was held and the father was found guilty by verdict.

because the father had contacted the mother. The father entered a plea of nolo contendere and was sentenced to twelve months of probation. A condition of his probation was no *violent* contact with the mother. In 2013, the mother sought a permanent protective order against the father, which was denied.

From October 2009 until 2013, the father had no contact with the child. In 2013, the father filed a petition to legitimate the child, seeking to obtain joint legal custody of the child, to establish visitation rights, and to have child support established. In its final order, entered nunc pro tunc May 29, 2013, the trial court granted the legitimation, declaring the father to be the legal father of the child, but found that it was not in the best interest of the child to have any visitation or contact with the child "[d]ue to the [the father]'s criminal history and family violence."[2] The court awarded sole physical and legal custody to the mother and ordered that no child support be paid due to the court's finding that the father lacked the means to pay. Finally, the trial court included a no-contact provision in the order:

> [The father] is ordered not to go to the minor child's school and to have
> no direct or indirect contact with the minor child.

[2] During the instant modification action, the mother presented evidence of the father's extensive criminal history, including convictions for burglary and theft by taking. The most recent conviction was for a misdemeanor in 2014.

The Court also Orders that [the father] is to have no direct or indirect contact with the minor child's mother . . . nor is [the father] to have any direct or indirect contact with [the mother]'s other minor child. . . .[3]

In 2015, after the child began exhibiting behavioral problems at school, the mother reached out to the father. The mother began allowing contact between the father and the child, leading to the mother supervising visits between the father and the child. Both the mother and the father testified that the father picked the child up from summer daycare more than once and that the father had unsupervised visits with the child without incident. Sometime in the fall of 2015, the mother cut off all contact after an unspecified disagreement between the parents.

In 2016, the father filed a petition for modification of custody, child support, and visitation. The petition was dismissed for want of prosecution on March 16, 2016, after the father failed to appear at a scheduled hearing on his petition.

On March 14, 2017, the father filed another petition for modification of custody, child support, and visitation, seeking to obtain joint physical and legal custody of the child, to establish visitation rights, and to have child support

_____

[3] While the father filed a motion for reconsideration of the 2013 order, which was denied, the father did not timely appeal the order.

established. The mother opposed the petition, including the request to establish child support. After a hearing, the trial court denied the father's petition in its entirety, finding that "it still is not in this child's best interests to have contact with the [father]." The father now appeals the trial court's final order.

1. The father first contends that the trial court erred in denying him any visitation rights with his child.

> In deciding visitation, the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, this [C]ourt will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this [C]ourt will not find there was an abuse of discretion.

(Citation and punctuation omitted.) *Williams v. Williams*, 301 Ga. 218, 220 (1) (800 SE2d 282) (2017). We must also bear in mind that

> [i]t is the express policy of this state to encourage that a child has continuing contact with parents and grandparents who have shown the ability to act in the best interest of the child and to encourage parents to share in the rights and responsibilities of raising their child after such parents have separated or dissolved their marriage or relationship.

5

OCGA § 19-9-3 (d). To that end, "only in exceptional circumstances should the non-custodial parent be denied the right of access to his child." (Citation omitted.) *Woodruff v. Woodruff*, 272 Ga. 485, 485-486 (1) (531 SE2d 714) (2000).

In explaining its decision to deny the father any contact with the child, the trial court provides only a short recitation of facts and of the legal proceedings in its order before concluding that "it still is not in this child's best interests to have contact with the [father]." The rest of the three-page order addresses the mother's counterclaim for contempt.[4]

Pursuant to Chapter 9 of Title 19 of the Official Code of Georgia which governs child custody proceedings, where the custody of any child is at issue between the parents,[5] the following applies:

> If requested by any party on or before the close of evidence in a
> contested hearing, the permanent court order awarding child custody

---

[4] In the modification action, the mother counterclaimed for contempt, stemming from three incidents of the father having contact with the mother and her children. The trial court declined to find the father in contempt for two of the incidents, but found the father willfully violated the 2013 order's no-contact provision with regard to an incident in which the father initiated contact with the mother's older child in a public place.

[5] While the father does not appeal the trial court's order to the extent it awards sole physical and legal custody to the mother, OCGA § 19-9-22 (1) defines "custody" as including visitation rights.

*shall* set forth specific findings of fact as to the basis for the judge's decision in making an award of custody including any relevant factor relied upon by the judge as set forth in paragraph (3) of this subsection. Such order shall set forth in detail why the court awarded custody in the manner set forth in the order. . . .

(Emphasis supplied.) OCGA § 19-9-3 (a) (8). Furthermore, OCGA § 9-11-52 (a) provides that "in all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law." See *Warren v. Smith*, 336 Ga. App. 342, 344-345 (785 SE2d 25) (2016). Here, because the record clearly reflects that the father requested the trial court make findings of fact and conclusions of law prior to the hearing, he was entitled to them. This is particularly true given the gravity of the court's decision to deny the father *any* visitation or contact with the child. See, e.g., *Chandler v. Chandler*, 261 Ga. 598, 599 (1) (409 SE2d 203) (1991) (trial court's effective denial of any visitation with child was abuse of trial court's discretion where "[l]ess extreme arrangements, including limited and supervised visitation, could be instituted to satisfy the trial court's concerns that appellant might abduct the child if granted visitation"); *Taylor v. Taylor*, 282 Ga. 113, 116 (646 SE2d 238) (2007) (Sears, J., dissenting) (trial court's order denying all visitation and prohibiting any contact with

7

child is "a de facto termination order" which sidesteps the clear and convincing evidence standard of proof constitutionally mandated in termination of parental rights proceeding). Accordingly, we vacate the portion of the trial court's order to the extent it denied the father's request for a modification of visitation, and we remand the case with instructions for the trial court to enter an order providing findings of fact and conclusions of law. See *Warren*, 336 Ga. App. at 344-345 (vacating trial court's custody order and remanding case where father requested findings of fact and conclusions of law and order failed to provide such).

2. The father next contends that to the extent the trial court had any valid basis for considering acts of family violence, the trial court erred in not adopting less extreme visitation provisions pursuant to OCGA § 19-9-7. In determining the best interest of the child during a custody proceeding, the judge may consider any relevant factor including "[*a*]*ny* evidence of family violence." (Emphasis supplied.) OCGA § 19-9-3 (a) (3) (P). During the hearing, the mother provided testimony concerning the incident which prompted the family violence protective order against the father. Furthermore, the trial court was presented with evidence, including the father's own testimony, of the father's guilty plea to family violence battery and third degree

cruelty to children. Thus, we cannot agree that the trial court had no valid basis for considering acts of family violence in this case.

OCGA § 19-9-7 allows a judge to award visitation or parenting time to a parent who committed one or more acts involving family violence provided the judge finds that adequate provision for the safety of the child and the parent who is a victim of family violence can be made. OCGA § 19-9-7 (a). If the judge makes such a finding, the judge may:

> (1) Order an exchange of a child to occur in a protected setting;
>
> (2) Order visitation or parenting time supervised by another person or agency;
>
> (3) Order the perpetrator of family violence to attend and complete, to the satisfaction of the judge, a certified family violence intervention program for perpetrators as defined in Article 1A of Chapter 13 of this title as a condition of the visitation or parenting time;
>
> (4) Order the perpetrator of family violence to abstain from possession or consumption of alcohol, marijuana, or any Schedule I controlled substance listed in Code Section 16-13-25 during the visitation or parenting time and for 24 hours preceding the visitation or parenting time;
>
> (5) Order the perpetrator of family violence to pay a fee to defray the costs of supervised visitation or parenting time;
>
> (6) Prohibit overnight visitation or parenting time;

9

(7) Require a bond from the perpetrator of family violence for the return and safety of the child; and

(8) Impose any other condition that is deemed necessary to provide for the safety of the child, the victim of family violence, or another family or household member.

OCGA § 19-9-7 (a). In his modification petition, the father requested "reasonable visitation" with the child. At the hearing, the father's attorney proposed a "graduated plan" to ease the child into visitation with the father. The mother testified that if the court were inclined to grant visitation to the father, she would prefer supervised visits.

In light of our holding in Division 1, we remand to give the trial court the opportunity to consider the applicability of OCGA § 19-9-7, and to enter the appropriate findings thereunder *if* the trial court is inclined to impose any of the conditions set forth therein, including supervised visitation.

3. The father next argues that the trial court erred in failing to enter a child support award and in failing to incorporate a child support worksheet or child support addendum into its final order. We agree.

OCGA § 19-6-15 (c) (1) pertinently provides:

The child support guidelines contained in this Code section are a minimum basis for determining the amount of child support and *shall*

10

*apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent*. This Code section *shall be used when the court enters a temporary or permanent child support order in a contested or noncontested hearing* or order in a civil action filed pursuant to Code Section 19-13-4.

(Emphasis supplied.) As previously explained by the Supreme Court of Georgia, "the child support guidelines apply not only to initial determinations of child support, but also to modification actions, and are the expression of the legislative will regarding the calculation of child support and must be considered by any court setting child support." (Citations and punctuation omitted.) *Wetherington v. Wetherington*, 291 Ga. 722, 726 (2) (a) (732 SE2d 433) (2012).

In a modification action, "the showing of a change in the parent's financial status or a change in the needs of the child is a threshold requirement. . . ." (Citation and punctuation omitted.) *Moore v. Moore*, 346 Ga. App. 58, 60 (3) (815 SE2d 242) (2018). "After the trial court finds satisfactory proof of a change in financial status, it must reconsider the amount of child support under the guidelines of OCGA § 19-6-15 (b)." *Wingard v. Paris*, 270 Ga. 439, 440 (511 SE2d 167) (1999). See also *Wetherington*, 291 Ga. at 725 (2) (a).

Here, the trial court did not address whether there had been a change in the financial circumstances of the father or the needs of the child since the 2013 order denying any child support.[6] Instead, the trial court again summarily denied the father's request to pay child support because the court found that "it still is not in this child's best interests to have contact with [the father]." Accordingly, we reverse the child support award made in the final order and remand the case for the trial court to determine whether there has been a substantial change in circumstances meriting a modification and, if so, what child support award is appropriate under the guidelines,

---

[6] We recognize that the 2013 order is not before us, but we note that it did not include a child support worksheet or addendum. The only specific findings included in the 2013 order to support the court's decision to award zero child support was that the father had been unemployed since 2006, and did not have the means to pay child support "even though he is not disabled."

12

with any deviations supported by the required written findings.[7] See *Wetherington*, 291 Ga. at 728 (2) (c).

We also take this opportunity to remind the trial court that "[c]hild support is the right of the child and not of its custodian. . . . The conduct of the custodian cannot deprive the child of this right to support, any more than the custodian can waive it for the child or contract it away." (Citations and punctuation omitted.) *Dept. of Human Resources v. Prince*, 198 Ga. App. 329, 331 (2) (401 SE2d 342) (1991).

4. Finally, the father argues that the trial court erred in failing to incorporate a parenting plan into its order. Again, we agree. OCGA § 19-9-1 (a) provides, in part, that "[t]he final order in any legal action involving the custody of a child, including

---

[7] The mother contends that no modification in child support was warranted because there was no substantial change in the father's financial position. This argument overlooks the fact that the trial court never addressed whether a substantial change in the father's financial position warranted a modification. The mother also argues that even if his financial position has changed since the legitimation order, the father still does not have the means to pay child support based on his submitted documentation. However, it is not for this Court to determine in the first instance whether the father has the means to pay child support. That is an issue for the trial court, following the child support guidelines, to determine. See, e.g., *Black v. Ferlingere*, 333 Ga. App. 789, 791-792 (2) (777 SE2d 268) (2015) (reversing trial court's order that no child support owed by either parent where order failed to include a child support worksheet or addendum, and specific findings of fact to support deviation from presumptive amount as required by OCGA § 19-6-15).

13

modification actions, *shall* incorporate a permanent parenting plan as further set forth in this Code section[.]" (Emphasis supplied.)

> [T]he parenting plan must include several details beyond custody and visitation, including, among many things, the rights of both parents to access the child's records and information related to education, health, health insurance, extracurricular activities, and religious communications. OCGA § 19-9-1 (b) (1) (D).

(Citation and punctuation omitted.) *Moore*, 346 Ga. App. at 60. In this case, the trial court failed to incorporate a parenting plan into its final order. The mother argues that to the extent any parenting plan was warranted in this case, it was included in the trial court's order. While we agree that "a separate court order exclusively devoted to a parenting plan [is] not . . . required," the statute clearly requires that the order include more "details beyond custody and visitation." OCGA § 19-9-1 (a), (b) (1) (D). See *Moore*, 346 Ga. App. at 59-60 (2). The trial court's order, here, merely states that the mother shall have sole legal and physical custody of the child and that the father shall have no visitation. The trial court's reference to the 2013 order does not remedy the issue as that order also failed to include a parenting plan. See *McFarlane v. McFarlane*, 298 Ga. 361, 362 (2) (782 SE2d 29) (2016) (rejecting argument that trial court's denial of a modification request left the previous parenting plan in place and

14

made new parenting plan unnecessary where prior order also failed to include parenting plan). Because the trial court did not enter a parenting plan with its order, we vacate the judgment and remand this case for compliance with the requirements of OCGA § 19-9-1. See *Moore*, 346 Ga. App. at 59-60 (2). See also *Williams*, 301 Ga. at 223-224 (3).

*Judgment vacated and case remanded with direction. Barnes, P. J., and Mercier, J., concur*.