**SECOND DIVISION
MILLER, P. J.,
MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 30, 2024**

# In the Court of Appeals of Georgia

A24A0932. TURNEY v. TURNEY.

MILLER, Presiding Judge.

In the first appearance of this child custody case before this Court, we vacated the trial court's child support and attorney fees awards and remanded for further proceedings in an unpublished opinion. The mother, proceeding pro se, now appeals from the revised support and fees awards issued by the trial court on remand. Because the support award failed to include a child in the mother's custody and the fees award was issued without proper notice, we again vacate the awards and remand the case for proceedings consistent with this opinion.

Nicole Turney ("the Mother") and Aron Turney ("the Father") were previously married and are the parents of five children, specifically two girls born in

2002 and 2004 and three boys born in 2005, 2007, and 2008. As part of the parents' divorce in 2020, the Father was awarded primary physical custody of the youngest girl, the Mother was awarded primary physical custody of the other four children, and the Father was ordered to pay child support.

The Father filed the instant lawsuit in June 2022, seeking (1) custody of the two youngest boys based on their custodial election, (2) child support, and (3) attorney fees. In response, the Mother submitted multiple proposed child support worksheets with different calculations based on the different potential custodial placements of the three boys.

By the time of the final hearing in October 2022, only the three boys remained minors. The Father was represented by counsel, and the Mother proceeded pro se. Regarding child support, the Father's counsel stated that if the Father was awarded primary physical custody of the two youngest boys and the Mother retained primary physical custody of the oldest boy, then the Mother should pay $236 in monthly support until the oldest boy no longer qualified for support, at which time she should pay $846 in monthly support. The trial court ruled that the Father should have primary physical custody of the two youngest boys and that it would re-visit the issue

of custody of the oldest boy if he made a custodial election, and the court made statements indicating that any child support award would only include the two youngest boys because custody of the oldest boy was not being modified. When the Mother asked about the child support worksheets she had submitted, the Father's counsel "stipulate[d] to [the Mother's] child support worksheet findings that [were] in the record and filed," and the court "adopt[ed them] ." It is unclear which of the Mother's multiple worksheets counsel and the court were referring to.

At the hearing, the Father's counsel requested attorney fees in the amount of $6,000, stating that the Father had paid counsel such amount. Counsel argued that the Mother had unnecessarily expanded the litigation and had been stubbornly litigious. Counsel also argued that as demonstrated by communications between the parties prior to the filing of the lawsuit, the Father "bent over backwards and offered to pay an outrageous amount of money to eliminate the necessity of this lawsuit," but he was forced to incur attorney fees due to the Mother's improper conduct. The trial court awarded the Father attorney fees "in full," finding that the Mother had not complied with discovery rules, engaged in wasteful litigation, and filed unnecessary motions.

On November 22, 2022, the trial court entered a final order (1) awarding the Father primary physical custody of the two youngest boys, and (2) requiring the Mother to pay the Father (a) $786 in monthly child support, (b) $6,000 for his attorney fees, and (c) $1,700 for fees of the guardian ad litem ("GAL"). The final order incorporated a child support addendum, which stated that there were two children for whom support was being provided under the order. The final order also incorporated one of the Mother's child support worksheets, which (1) was labeled "For Final Hearing Version 2. 2 w/ Mother Deviation for Insurance Premiums," (2) stated that the oldest boy and the youngest boy were included, but that the middle boy was excluded, (3) indicated that the Mother would have primary physical custody of the oldest boy and the youngest boy, and (4) calculated the Father's monthly child support obligation at $1,070 and the Mother's monthly child support obligation at $786.

The Mother appealed, and this Court affirmed the custody ruling and the ruling regarding the GAL's fees but vacated the awards of child support and attorney fees. Regarding the child support award, this Court concluded that it was not apparent that the award "appropriately took into account" the split parenting arrangement, under

which two boys would live with the Father and one boy would live with the Mother.[1] This Court cited the provision in OCGA § 19-6-15 (b) (11) (2022) that "[i]n a split parenting case, there shall be a separate calculation and final order for each parent," and cited the explanation in *Parker v. Parker*, 293 Ga. 300, 305-306 (2) (745 SE2d 605) (2013), that "separate worksheets are required for each child in a split parenting situation." Given the lack of clarity, this Court vacated the child support award and remanded the case for the trial court to "revisit and clarify the calculation of child support obligations resulting from its custody decisions." Regarding the attorney fees award, this Court explained that the final order did not specify any statutory basis for the award, and while the award may have been entered pursuant to OCGA § 9-15-14, it contained no findings of fact necessary to support such an award. Accordingly, this Court vacated the fees award and remanded the case for the trial court to make the necessary findings.

On remand, the trial court issued a revised final order on November 7, 2023. In the revised final order, the court again directed the Mother to pay the Father $786 in

---

[1] "Split parenting" occurs in a child support case "if there are two or more children of the same parents, when one parent is the custodial parent for at least one child of the parents, and the other parent is the custodial parent for at least one other child of the parents." OCGA § 19-6-15 (a) (21) (2022).

monthly child support and $6,000 in attorney fees. Regarding child support, the court acknowledged that it intended a split parenting arrangement but explained that because it was not modifying custody of the oldest boy, its child support award reflected "the change of physical custody . . . of the two younger [boys] only," and "modification of child support only needed to be made for [these two boys]." The court further explained that the Mother's monthly child support obligation of $786 was based on her own child support worksheet, which the parties stipulated for the court to adopt. The court stated that while the Mother submitted multiple child support worksheets, the worksheet it adopted (1) was labeled "For Final Hearing, Version 3b, 2 w/ Father Deviation for Insurance Premiums," (2) only included the two youngest boys and specifically excluded the oldest boy, and (3) was the only worksheet submitted by the Mother that applied to the court's ruling on custody, i.e., the two youngest boys living with the Father.[2]

---

[2] While the worksheet labeled "For Final Hearing. Version 3b. 2 w/ Father Deviation for Insurance Premiums" was not the worksheet incorporated into the final order, both of these worksheets identically calculated the Father's monthly child support obligation at $1,070 and the Mother's monthly child support obligation at $786.

Regarding attorney fees, the trial court specified that the award was made under OCGA § 9-15-14 (b) and found that the Mother had unnecessarily protracted and expanded the litigation and had been stubbornly litigious throughout the case. The court explained that the Mother had not complied with discovery rules, had been wasteful in her litigation, filed frivolous motions, and refused to communicate or cooperate with the Father's counsel and the GAL. The court found that the Father had spent $6,000 "in reasonable and necessary attorney fees for this litigation," noting his counsel's statement that counsel had been paid $6,000 to represent him.

The Mother filed an application for discretionary review of the revised final order, which this Court granted. This appeal followed .

1. The Mother argues that the revised child support award was improper because it did not include any calculation of support owed for the oldest boy in her custody.[3] We agree.[4]

---

[3] The Father has not filed an appellate brief.

[4] While the Mother has not raised the issue, we note that the child support worksheet incorporated into the final order (1) was not labeled "For Final Hearing. Version 3b. 2 w/ Father Deviation for Insurance Premiums," contrary to the trial court's statement in the revised final order, and (2) indicated that the Mother would have primary physical custody of the oldest boy and the youngest boy, contrary to the court's actual custody ruling.

On appeal from an order modifying child support, this Court reviews the trial court's application of the law to the facts de novo. *Cousin v. Tubbs*, 353 Ga. App. 873, 879-880 (3) (a) (840 SE2d 85) (2020).

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).

We conclude that the child support award in the revised final order suffered from the same flaw as the award in the initial final order: it did not include a child support worksheet, calculation, and award for the oldest boy whose custody was with the Mother under the split parenting arrangement. "[T]he child support guidelines apply not only to initial determinations of child support, but also to modification actions, and are the expression of the legislative will regarding the calculation of child

support and must be considered by any court setting child support." (Citation omitted.) *Wetherington v. Wetherington*, 291 Ga. 722, 726 (2) (a) (732 SE2d 433) (2012). The version of the guidelines in effect when the trial court issued its orders provided that "[i]n a split parenting case, there shall be a separate calculation and final order for each parent." OCGA § 19-6-15 (b) (11) (2022 & 2023); see also *Williamson v. Williamson*, 293 Ga. 721, 725 (3) (748 SE2d 679) (2013) ("The process of calculating child support under the guidelines (and the associated child support worksheet) is structured around the initial presumption that the noncustodial parent will pay some amount to the custodial parent, who typically bears the everyday expenses of caring for the children as they live with him or her."). The guidelines further provided that:

> In cases of split parenting, a worksheet shall be prepared separately by each custodial parent for each child for whom such parent is the custodial parent, and that worksheet shall be filed with the clerk of court. For each split parenting custodial situation, the court shall determine:
>
> (1) [w]hich parent is the obligor;
>
> (2) [t]he presumptive amount of child support;

9

(3) [t]he actual award of child support, if different from the presumptive amount of child support;

(4) [h]ow and when the sum certain amount of child support owed shall be paid; and

(5) [a]ny other child support responsibilities for each parent.

OCGA § 19-6-15 (l) (2022 & 2023).[5] The child support award in the revised final order does not comply with these requirements.

The fact that the trial court was only modifying custody of the two youngest boys, or that the court previously issued an award of child support for the oldest boy at the time of the parties' divorce in 2020, did not relieve it of the requirement to conduct an updated child support calculation for the oldest boy when it modified custody. As an initial matter, in the prior appeal this Court noted the trial court's calculation of child support at the time of the divorce but still concluded that it appeared that the child support award in the November 2022 final order did not appropriately take into account a split parenting arrangement, because in a split

_____

[5] The current guidelines have similar requirements. See OCGA § 19-6-15 (a) (21), (l) (July 2024).

parenting case there shall be a separate calculation and final order for each parent. See

*Security Life Ins. Co. of America v. Clark*, 273 Ga. 44, 46 (1) (535 SE2d 234) (2000)

("Under the 'law of the case' rule, any ruling by the Supreme Court or the Court of

Appeals in a case shall be binding in all subsequent proceedings in that case in the

lower court and in the Supreme Court or the Court of Appeals, as the case may be.")

(citation and punctuation omitted).

Furthermore, the provisions of the child support guidelines regarding the

requirement that a child support award in a split parenting arrangement include a

calculation for each custodial parent and that parent's children do not include any

exceptions for children whose custody is not being modified. Indeed, here the award

of child support issued at the time of the divorce was based on the parties' financial

circumstances at that time, while an award of support issued at the time of the

subsequent custody modification should be based on the parties' updated financial

circumstances. See *Ga. Dept. of Human Resources v. Sweat*, 276 Ga. 627, 629 (2) (580

SE2d 206) (2003) (the guidelines distinguish between custodian and non-custodial

parents "in order to ensure that the non-custodial parent contributes his or her *fair*

*share* to ensure the welfare of the children is protected") (emphasis supplied). Thus,

11

the trial court erred in issuing its revised child support award without including a support calculation for the oldest boy, and on remand the court should include a support calculation for this boy as of the time of the custody modification.[6] See *Parker*, supra, 293 Ga. at 306-308 (3) (in split parenting arrangement, trial court was required to use factually accurate data in child support worksheets for each child).

Moreover, the Mother did not invite the error or stipulate to the child support worksheet adopted by the trial court. See *Corley v. Jackson*, 364 Ga. App. 796, 800-801 (2) (872 SE2d 324) (2022) ("A party will not be heard to complain of error induced by [her] own conduct, nor to complain of errors expressly invited by [her].") (citation omitted.) While the Mother filed the worksheet that was ultimately adopted by the court, she filed multiple worksheets based on various custodial arrangements, she did not state that she wished to proceed under any particular worksheet, and she did not request that the court omit a child support calculation for the oldest boy in her

---

[6] We note that this issue was not rendered moot by the oldest boy turning 18 years old and attaining the age of majority. See OCGA §§ 19-6-15 (e) (the duty to provide child support generally continues until the child reaches the age of majority); 39-1-1 (a) (the age of majority is 18 years). A custodial parent may be awarded back support for periods of time when there was no support order in place. See *Day v. Mason*, 357 Ga. App. 836, 839 (1) (851 SE2d 825) (2020); *Smith v. Carter*, 305 Ga. App. 479, 480-482 (2) (699 SE2d 796) (2010).

custody. Cf. *Corley*, supra, 364 Ga. App. at 800-801 (2) (the father's failure to submit an updated child support worksheet despite being instructed to do so by the trial court caused any error by the court in failing to consider such a worksheet).

2. Next, the Mother argues that the revised attorney fees award is improper because she did not receive proper notice of a potential award under OCGA § 9-15-14 (b), the award was a lump sum and did not apportion the fees awarded to any sanctionable conduct, and the award was not supported by findings of fact. We conclude that the Mother was not provided sufficient notice that the trial court may assess fees against her pursuant to OCGA § 9-15-14 (b).

OCGA § 9-15-14 (b) allows the trial court, either on its own motion or on the motion of any party, to assess attorney fees and litigation expenses if it finds that an attorney or party "brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct." See *Butler v. Lee*, 336 Ga. App. 102, 104 (1) (783 SE2d 704) (2016). "However, the party against whom such fees are sought is entitled to notice that such relief may be awarded." Id.; see *Williams v. Cooper*, 280

Ga. 145, 146 (1) (625 SE2d 754) (2006) ("One against whom an award of attorney fees is sought is entitled to an evidentiary hearing upon due notice permitting him an opportunity to confront and challenge the value and the need for the legal services claimed.") (citation and punctuation omitted). "What the statute provides as the means of giving proper notice is a motion for such fees filed of record by a party or some form of notice to any person potentially liable for an assessment of fees under the statute that the trial court is considering its own motion for the imposition of the sanctions made available by the statute." *Williams*, supra, 280 Ga. at 147 (1). "[W]ithout proper notice that an award of attorney fees under OCGA § 9–15–14 (b) is under consideration, the party against whom fees are assessed has not been given an opportunity to challenge the basis on which the fees are assessed." Id.

The record here contains no indication that the Mother received any notice that an attorney fees award under OCGA § 9-15-14 (b) would be addressed at the final hearing or issued thereafter. In the complaint seeking a modification of custody and child support, the Father simply asserted that he was entitled to attorney fees incurred as a result of pursuing this lawsuit, without referencing any particular statutory provision. The trial court's notice of the hearing provided no indication that the court

14

was contemplating an award under OCGA § 9-15-14. And while the Father's counsel made arguments and the court made findings at the hearing that apparently implicated the statute, neither counsel nor the court specifically referenced the statute.

"Without notice that the trial court was considering an award of fees pursuant to OCGA § 9-15-14 (b), the [final] hearing . . . cannot be considered a realistic opportunity to contest the need for the legal services forming the basis of the award under OCGA § 9-15-14 (b)." *Williams*, supra, 280 Ga. at 146 (1). "Since [the Mother] was never given proper notice of the possibility that the [final] hearing could result in an award against her [under OCGA § 9-15-14 (b)], the award cannot stand." Id. at 146-147 (1) (vacating fees award under OCGA § 9-15-14 (b) because prior to the entry of the award the record contained no motion by a party seeking fees under the statute and no mention by the trial court that it was considering an award under the statute, even though the issue of attorney fees under a different statute was previously raised); see *Glass v. Glover*, 241 Ga. App. 838, 838-839 (528 SE2d 262) (2000) (reversing fees award under OCGA § 9-15-14 (b) because there was no motion for such fees in the record and no indication that a sua sponte motion for such fees was before the trial court). "The award must, therefore, be vacated and the matter remanded to the trial

15

court with direction to conduct another hearing, upon proper notice to all persons concerned, at which [the Father] may present evidence establishing [the Mother's] liability under OCGA § 9-15-14 (b)." *Williams*, supra, 280 Ga. at 147 (1).

Given our conclusion that the Mother did not receive proper notice that the trial court may assess attorney fees against her pursuant to OCGA § 9-15-14 (b), it would be premature for us to address whether the fees award was a lump sum or not supported by findings of fact. However, we note that an award under OCGA § 9-15-14 (b) must be limited "to those fees incurred because of the sanctionable conduct," *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009) (citation and punctuation omitted), and "cannot be based on conduct occurring before the proceeding was initiated." *Cook v. Campbell-Cook*, 349 Ga. App. 325, 332 (3) (b) (826 SE2d 155) (2019). See *Reid v. Reid*, 348 Ga. App. 550, 554 (2) (823 SE2d 860) (2019) ("[L]ump sum or unapportioned attorney fees awards are not permitted in Georgia, and we will vacate and remand for further factfinding where the trial court's order, on its face, fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why the court awarded one amount of fees rather than another under OCGA § 9-15-14 (b).") (citation omitted).

In conclusion, the trial court erred in failing to include in the revised child support award a calculation for the oldest boy in the Mother's custody. The court also failed to provide proper notice to the Mother that it may assess attorney fees against her pursuant to OCGA § 9-15-14 (b). Accordingly, we vacate the revised awards of child support and attorney fees, and remand the case for proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Markle and Land, JJ., concur.*