308 Ga. 882
FINAL COPY

S20A0410.  TREADAWAY v. THE STATE.

McMILLIAN, Justice.

Dora Treadaway was convicted of felony murder in connection with the death of her husband Claude "Randy" Treadaway.[1] On appeal, Treadaway argues that the trial court's summary order denying her motion for new trial should be vacated and remanded for additional factual findings, that the State failed to prove beyond a reasonable doubt that Treadaway committed any unlawful act

---

[1] The crimes occurred on August 1, 2009. On January 4, 2010, a Chattooga County grand jury indicted Treadaway for malice murder, felony murder predicated on aggravated assault, voluntary manslaughter, and aggravated assault. At a trial held from February 22 to February 26, 2010, a jury found Treadaway not guilty of malice murder and voluntary manslaughter but guilty of felony murder and aggravated assault. The trial court merged the aggravated assault into the felony murder conviction and sentenced Treadaway to serve life in prison.

Treadaway filed a motion for new trial on March 1, 2010, which she amended through new counsel on March 19, 2019, and March 28, 2019. Following a hearing, the trial court denied Treadaway's motion (as amended) on July 17, 2019, and her motion for reconsideration on August 9, 2019. Treadaway filed a notice of appeal to this Court; this case was docketed to the term beginning in December 2019 and was orally argued on February 12, 2020.

that proximately caused Randy's death, that the trial court's jury instructions on causation were erroneous, and that trial counsel was ineffective in relying on cross-examination of the State's medical expert rather than calling a defense expert witness and in failing to request the proper charge on causation. We disagree and affirm Treadaway's convictions.

Viewed in the light most favorable to the jury's verdicts,[2] the evidence showed that Dora and Randy Treadaway were married and lived together in Chattooga County. Testimony from several witnesses indicated that both were heavy drinkers — Randy was a chronic alcoholic — and that Treadaway was often violent toward Randy.

On the afternoon of August 1, 2009, Terry Trapp drove with his mother to the Treadaways' residence for a social visit. Upon arriving, Trapp heard Treadaway and Randy arguing loudly, so Trapp and his mother opted to visit Wayne Posey, a neighbor who

---

[2] See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

lived in his own mobile home on the Treadaways' property. Shortly thereafter, a visibly intoxicated and "very mad" Treadaway went inside Posey's home and announced, "[H]e's going to quit drinking one way or the other and I mean it." Treadaway left but later returned with a broom in her hand, stating, "I believe I've done it this time, I think I killed him." Treadaway announced that she had beaten Randy with the broom handle.[3]

Trapp went over to the Treadaways' home to investigate and discovered Randy lying on his right side in an empty bathtub. Randy was naked and in the fetal position. Feeling no pulse and seeing that Randy had turned pale blue, Trapp yelled for help. Posey came over, and he and Trapp pulled Randy out of the bathtub and performed CPR while Trapp's mother called 911. Posey observed that Randy's hair was wet and his body was "moist." During this time, Treadaway was "screaming and crying [about] how much she loved Randy and . . . couldn't believe it had happened." When emergency

---

[3] The handle of the broom had previously been replaced with the shaft of a metal "weed eater."

responders arrived, Treadaway stated that she was tired of Randy's drinking and that she had hit him in the back of his head with the broom handle and killed him. Chattooga County deputies observed Treadaway, who was "really intoxicated [and] could[ ] hardly stand up," sitting on the trailer steps crying and saying over and over again "Randy's dead and I killed him."

Treadaway was taken into custody that evening but was not interviewed due to her apparent intoxication. The following day, after she was advised of her rights under *Miranda*,[4] Treadaway denied that she and Randy had been arguing, denied hitting him with a broom that day (although she admitted hitting him with a broom in the past), and claimed that she found Randy lying on the bathroom floor right around the time that Trapp and his mother arrived at the home.

A medical examiner with the Georgia Bureau of Investigation testified that, at the time of autopsy, Randy had fluid in his stomach, enlarged lungs, and multiple blunt-force injuries to his back, neck,

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

and head that had been inflicted immediately prior to his death. The medical examiner also noted that Randy had reportedly expelled approximately one cup of odorless fluid when rolled over at the scene.[5] The medical examiner opined that Randy died due to drowning and blunt-force trauma and also concluded that Randy's history of alcoholism and blood alcohol content — which was at least 0.4 grams at the time of his death — though not fatal, were circumstances contributing to Randy's death.

The State also presented evidence that Randy, who weighed 126 pounds at the time of his death, had lost all the fingers on his right hand in an industrial accident as a teenager. In addition, he had recently broken both of his feet in an accident and was suffering from significantly reduced mobility, having to "scoot on his bottom" to move around the home.

1. Treadaway contends that the State failed to prove beyond a reasonable doubt that she committed any unlawful act that proximately caused Randy's death. In considering Treadaway's

---

[5] A sheriff's officer subsequently testified to that fact.

challenge to the sufficiency of the evidence, our review is limited to whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which she was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Mims v. State*, 304 Ga. 851, 853 (1) (a) (823 SE2d 325) (2019) (citation and punctuation omitted).

"[T]he felony murder statute requires only that the defendant's felonious conduct proximately cause the death of another person." *State v. Jackson*, 287 Ga. 646, 660 (6) (697 SE2d 757) (2010). "Proximate causation imposes liability for the reasonably foreseeable results of criminal conduct if there is no sufficient, independent, and unforeseen intervening cause." *Frazier v. State*, (308 Ga. __, __ (2) (a) (841 SE2d 692) (2020) (citations and

punctuation omitted). An unlawful injury is the proximate cause of death when:

> (1) the injury itself constituted the sole proximate cause of the death; or (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause.

*Taylor v. State*, 303 Ga. 624, 627 (1) (814 SE2d 353) (2018) (citation and punctuation omitted).

Here, Treadaway admitted numerous times that she struck Randy with a metal broom handle and that she had killed him shortly before he was discovered dead in the bathtub. The medical examiner also testified that Randy had numerous blunt-force injuries that were inflicted just prior to his death, some of which resulted in extensive hemorrhaging under the skin and were consistent with Randy having been hit with a blunt instrument, including the Treadaways' metal broom, which was admitted as an exhibit at trial. The medical examiner explained that the blunt-force trauma to Randy's head, neck, torso, and extremities would have

been painful and may have restricted his movement, making it more difficult for him to extricate himself from a drowning situation and that, in his expert opinion, the blunt-force trauma directly and materially contributed to Randy's death.[6]

Whether Treadaway's actions were the sole cause of Randy's death or would have otherwise caused his death under different circumstances is immaterial. "We consider the elements of the felony not in the abstract, but in the actual circumstances in which the felony was committed." *Robinson v. State*, 298 Ga. 455, 458 (1) (782 SE2d 657) (2016) (citation and punctuation omitted). And as we have explained before, "the offender takes [her] victim as [s]he finds him." *Cordero v. State*, 296 Ga. 703, 712 (3) (770 SE2d 577) (2015) (citation and punctuation omitted). Viewed as a whole, the evidence was sufficient for a rational trier of fact to find beyond a reasonable

---

[6] The medical examiner also explained that a diagnosis of drowning is at times a diagnosis of exclusion and that he based his diagnosis here on the circumstances identified at the scene — that Randy was found in a bathtub, his hair was wet, and he expelled odorless liquid from his mouth when rolled over — as well as his clinical findings, including that Randy had fluid in his stomach.

doubt that Treadaway was guilty of felony murder based on the aggravated assault of her highly intoxicated, disabled husband. See *Eberhart v. State*, 307 Ga. 254, 261-62 (2) (a) (835 SE2d 192) (2019) (evidence sufficient to uphold defendant's felony murder conviction based on aggravated assault where medical examiner testified that the victim died from hypertensive cardiovascular disease exacerbated by physical exertion and TASER application); *Chaney v. State*, 281 Ga. 481, 482 (1) (640 SE2d 37) (2007) (upholding defendant's felony murder conviction based on aggravated assault for striking the victim in the head with a gun, which caused him to fall to the pavement, where the medical examiner testified that the victim's skull fracture was caused either by the strike or the fall).

2. Before turning to the merits of Treadaway's remaining enumerations of error, we address her contention that the summary order denying her motion for new trial, which was prepared by the State following an ex parte request by the trial court, should be vacated and remanded to include findings of fact and conclusions of law. She argues that such findings are required for this Court to

conduct a meaningful review of the trial court's denial of her claim of ineffective assistance of counsel and for the trial court to consider expert evidence presented at the motion for new trial hearing in deciding whether to grant a new trial on the general grounds. Although we are troubled by the trial court's procedure in ruling on the motion for new trial, we conclude that there is no basis for vacating the trial court's order.

The parties generally agree on what happened procedurally at the close of the motion for new trial hearing on April 1, 2019. After the parties finished presenting evidence, the trial court allowed the parties to present their arguments by briefing rather than oral argument. Treadaway timely filed her brief on April 22, 2019. When the State's deadline passed, Treadaway's counsel inquired as to the status of the State's brief and learned on May 29, 2019, that the State had made an ex parte request for an extension of time, which the trial court had granted. On July 10, 2019, the trial judge's administrative assistant called the assistant district attorney to request, for the court's consideration, an order denying Treadaway's

motion for new trial. The following day, the assistant district attorney prepared a proposed order using a standard Lookout Mountain Judicial Circuit template.[7] The trial court issued an order on July 17, 2019, denying Treadaway's motion, which stated: "Upon a consideration of the evidence presented and the argument of counsel, the Defendant's motion is hereby DENIED." The State never filed a brief in opposition to Treadaway's motion for new trial.

We begin our analysis by recognizing the general rule that there is no requirement that a trial court issue written findings of fact and conclusions of law in ruling on a motion for new trial.[8] See *Murdock v. State*, 299 Ga. 177, 178 (2) (787 SE2d 184) (2016) ("[W]here a trial judge ruling on a new trial motion enters an order

---

[7] In its response to Treadaway's motion for reconsideration of the denial of the motion for new trial, the State described the circumstances under which the State prepared the proposed order.

[8] Treadaway's reliance on *Debelbot v. State*, 305 Ga. 534 (826 SE2d 129) (2019), is misplaced. In *Debelbot*, this Court concluded that the trial court's order was insufficient to permit meaningful review of the defendants' claims of ineffective assistance of counsel because it made sweeping conclusions regarding both the credibility of the defendants' proffered fact and expert witnesses and the admissibility of the defendants' medical evidence, some of which were inconsistent. Id. at 540-44 (2). The trial court's order in this case does not suffer from the same internal inconsistencies.

that, without more, recites that the new trial is refused or denied, this will be taken to mean that the judge has in the exercise of his discretion approved the verdict." (citation and punctuation omitted)); *Butts v. State*, 297 Ga. 766, 772 (3) (778 SE2d 205) (2015) (same). This is true both when the trial court is assessing an ineffective assistance of counsel claim, *White v. State*, 287 Ga. 713, 720 (4) (699 SE2d 291) (2010) (affirming trial court's summary denial of defendant's motion for new trial on ineffective assistance grounds despite noting the denial contained no findings of fact with regard to the allegations of ineffective assistance of counsel), and when considering whether to grant a new trial on the general grounds, *Price v. State*, 305 Ga. 608, 612-13 (3) (825 SE2d 178) (2019) (rejecting defendant's claim of error that the trial court's order failed to reflect that the trial court evaluated the credibility of the witnesses and weighed the evidence in deciding whether to exercise its discretion to grant a new trial in its role as the "thirteenth juror"). "[I]n the absence of affirmative evidence to the contrary," this Court will presume "that the trial court understood

the nature of its discretion and exercised it." *Wilson v. State*, 302 Ga. 106, 108 (II) (a) (805 SE2d 98) (2017) (citations and punctuation omitted). See also *Davis v. State*, 306 Ga. 430, 432-33 (831 SE2d 804) (2019) ("[I]n the absence of explicit factual and credibility findings by the trial court, we presume implicit findings were made supporting the trial court's decision."); *Moore v. State*, 303 Ga. 743, 746 (814 SE2d 676) (2018) ("Absent evidence to the contrary, we presume that trial judges, as public officers, follow the law in the exercise of their statutory duties and authority." (citations and punctuation omitted)).

Treadaway asserts, however, that the general rules and presumptions do not apply here because the ex parte contact between the trial court and the State resulted in the summary denial of the motion for new trial, even though the State never directly or explicitly responded to Treadaway's arguments.[9] Thus,

---

[9] At oral argument, the State argued that the trial court should have been able to discern the State's position based on the questions the State asked during cross-examination of Treadaway's witnesses at the motion for new trial hearing.

we will address whether the presumption that the trial court properly understood the nature of its discretion and exercised it applies under these circumstances.

It is well established in Georgia that a trial court may request and adopt a proposed order from either party. See *State v. Holmes*, 306 Ga. 647, 651 (2) (832 SE2d 777) (2019) (adopting a proposed order "does not itself demonstrate an absence of cautious discretion"). See also *Fuller v. Fuller*, 279 Ga. 805, 806 (1) (621 SE2d 419) (2005) ("Even when a trial court adopts a proposed order verbatim, the findings of fact therein are those of the court and may be reversed only if they are clearly erroneous."). However, when a trial court requests a party to submit a proposed order, it should apprise the other party of the request and allow an opportunity to respond to any proposed findings and conclusions. See *Fuller*, 279 Ga. at 806 (1).

Here, the State never submitted argument for the trial court's review, and the trial court requested that the State draft the summary order without apprising Treadaway's counsel. However,

Treadaway bore the sole burden on her motion for new trial. And where Treadaway presented her arguments in support of her motion for new trial through briefing filed more than two months before the trial court's request for the State to submit a proposed order, the trial court had the opportunity to review Treadaway's arguments as well as the evidence presented at the hearing. In the absence of evidence to the contrary, we must presume that the trial court properly exercised its discretion and applied the correct standards but was not persuaded by Treadaway's arguments on which she bore the burden of proof.[10] See *Murdock*, 299 Ga. at 178 (2). In addition, because the record reflects that the trial court directed the State to draft an order denying the motion for new trial and the State provided a proposed order consistent with that direction, this is not a case in which findings were prepared by the prevailing party

---

[10] Because the trial court denied Treadaway's motion for new trial on the general grounds, this case does not present the occasion for us to address whether it is proper for a trial court to consider evidence outside what was presented to the jury at trial when ruling on the general grounds. See OCGA §§ 5-5-20 and 5-5-21; *State v. Arline*, 345 Ga. App. 178, 178-80 (1) (812 SE2d 537) (2018) (physical precedent only).

"without judicial guidance," and we cannot conclude that the trial court abdicated its adjudicative function. See *Fuller*, 279 Ga. at 807 (1) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 572 (II) (105 SCt 1504, 84 LE2d 518) (1985)).

We need not decide whether the trial court's contact with the State violated the prohibition on certain ex parte contacts in Rule 2.9 (A) of the Code of Judicial Conduct[11] and Uniform Superior Court Rule 4.1[12] because "even orders prepared ex parte do not violate due process and should not be vacated unless a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair." *Holmes*, 306 Ga. at 651-52 (2) (citation and punctuation omitted). Although the circumstances of this case are indecorous, Treadaway has not shown that the trial court failed to

---

[11] "Judges shall not initiate, permit, or consider ex parte communications, or consider other communications made to them outside the presence of the parties, or their lawyers, concerning a pending proceeding or impending matter, subject to [enumerated exceptions]."

[12] "Except as authorized by law or by rule, judges shall neither initiate nor consider ex parte communications by interested parties or their attorneys concerning a pending or impending proceeding."

fully review the evidence or her claims or that the process was otherwise fundamentally unfair.[13] See *Rafi v. State*, 289 Ga. 716, 721 (5) (715 SE2d 113) (2011) (rejecting appellant's due process argument regarding the State's proposed order denying his motion for new trial, adopted verbatim by the trial court because he failed to show the findings were clearly erroneous and failed to demonstrate that the process by which the trial court arrived at its findings was fundamentally unfair).

3. Turning to the merits, Treadaway asserts two related errors regarding the trial court's charge to the jury.

(a) First, Treadaway claims that the trial court erred by

---

[13] Treadaway relies on *Jefferson v. Upton*, 560 U.S. 284 (130 SCt 2217, 176 LE2d 1032) (2010), to argue that the summary order should be vacated and remanded for explicit factual findings, but *Jefferson* is distinguishable. In *Jefferson*, the state habeas court had adopted the State's proposed order verbatim following an ex parte request, despite the order's discussion of witnesses who had never testified, raising serious doubts as to whether the habeas judge even read, much less carefully considered, the State's proposed order. Id. at 288 (I) (remanding case where the Court of Appeals failed to address Jefferson's argument that the state habeas court's procedures deprived the appellate court of its ability to defer to the habeas court's findings of fact). Here, the trial court directed the State to prepare an order denying the motion for new trial, which is exactly what the State did. Treadaway cannot point to extraneous or incorrect findings that would raise doubts as to whether the trial court read and considered the State's proposed order.

refusing to give her requested charge on proximate causation. In reviewing this claim of error, the jury instructions are reviewed and considered as a whole. See *Brown v. State*, 297 Ga. 685, 689 (3) (a) (777 SE2d 466) (2015).

Treadaway's defense at trial was that even if she hit Randy with a metal broom, she did not cause his death, and trial counsel requested the following charge on proximate causation:

> With regard to the issue of causation, I instruct you that if, in a given case, the injury complained of did not flow naturally and directly from the wrongful act attributed to the defendant, or could not reasonably have been expected to result therefrom, or would not have resulted therefrom but for the interposition of some independent, unforeseen cause, or if you have a reasonable doubt that this is so, then the defendant's allegedly wrongful act would not be the proximate cause of the injury and it is your duty to find [her] not guilty.[14]

The charge conference was not transcribed, so we are unable to review the trial court's reasoning in refusing the charge or trial counsel's response to that ruling.

However, the trial court ultimately charged the jury, in

---

[14] The language of the charge requested by counsel was derived from *Miller v. State*, 236 Ga. App. 825 (513 SE2d 27) (1999).

relevant part, as follows:

> Now, Count Two charges this defendant with the offense of felony murder. And in that regard I instruct you that a person also commits the crime of murder when in the commission of a felony offense that person causes the death of another human being with or without malice.
>
> . . .
>
> Where one inflicts an unlawful injury upon the person of another such injury may be found to be the cause of death of the person injured whenever it shall be made to appear that the injury itself constituted the cause of the death or directly and materially contributed to the happening of a secondary or consequential cause of the death or materially sped up the death although the death would have occurred anyway.
>
> The burden of proof rests upon the State to prove beyond a reasonable doubt that the injury inflicted by the defendant, if any, upon the deceased is the cause of death as I have previously instructed you. If the State has failed to prove [this] beyond a reasonable doubt then you should acquit the defendant.

The trial court also instructed the jury on the felony offense of aggravated assault and that "[f]acts and circumstances that merely place upon the defendant a grave suspicion of the crime charged or that merely raise a speculation or conjecture as to her guilt are not sufficient to warrant a conviction."

Considering the charges as a whole, we conclude that the trial court's charge was an accurate statement of the law and was sufficient to instruct the jury on the principles of proximate causation relevant to this case. See *Taylor*, 303 Ga. at 627 (1) (an unlawful injury is the proximate cause of death when the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death or materially accelerated the death, although proximately occasioned by a pre-existing cause); *Anthony v. State*, 303 Ga. 399, 413 (13) (811 SE2d 399) (2018) (although the trial court did not use the phrase "intervening cause," the charges on proximate cause adequately stated the law and the defendant was not entitled to a charge that used the exact language he sought).

(b) Treadaway also argues, however, that because the trial court refused to give her requested proximate cause charge, it erred in failing to charge the jury using Pattern Charge 2.10.30.[15] She

[15] Pattern Charge 2.10.30 provides, in pertinent part, as follows:
In order for a homicide to have been done in the commission of this

concedes that, because she did not object to its omission, we may review this claim for plain error only, and under that standard, Treadaway must show "that the error was not affirmatively waived; that it was obvious beyond reasonable dispute; that it likely affected the outcome of the proceedings; and that it seriously affected the fairness, integrity, or public reputation of the proceedings." *Howard v. State*, 307 Ga. 12, 15 (2) (834 SE2d 11) (2019) (citations omitted). However, as we have concluded that the trial court's instruction as a whole was legally correct and was sufficient to instruct the jury on the relevant principles of proximate causation, Treadaway cannot show error, much less plain error. See *Howard*, 307 Ga. at

---

particular felony, there must be some connection between the felony and the homicide. The homicide must have been done in carrying out the unlawful act and not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed. . . . The felony must have a legal relationship to the homicide, be at least concurrent with it in part, and be a part of it in an actual and material sense. A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 2.10.30 (4th ed. 2007).

18 (2) (defendant could not demonstrate error and certainly not obvious error beyond reasonable dispute in the giving of the jury instruction).

4. Finally, Treadaway argues that her trial counsel rendered ineffective assistance of counsel by failing to call an expert witness to counter the State's medical expert and in failing to request the pattern charge on causation. To succeed on these claims, she must demonstrate both that her trial counsel performed deficiently and that, absent that deficient performance, a reasonable probability exists that the outcome at trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-95 (III) (104 SCt 2052, 80 LE2d 674) (1984). If a defendant fails to satisfy either part of the *Strickland* test, we need not consider the other. See *Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018). To prove deficient performance, a defendant must show that trial counsel performed at trial "in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms." *Shaw v. State*, 307 Ga. 233, 249-50 (6) (835 SE2d 279) (2019)

(citation and punctuation omitted). "This requires a defendant to overcome the strong presumption that trial counsel's performance was adequate." *Swanson v. State*, 306 Ga. 153, 155 (2) (829 SE2d 312) (2019) (citation and punctuation omitted).

(a) Treadaway first asserts that her trial counsel was constitutionally ineffective in relying solely on cross-examination of the State's medical examiner rather than securing a forensic pathologist as an expert witness for the defense.

At the new trial hearing, lead trial counsel testified that he consulted with a former GBI medical examiner whom he has frequently utilized for an independent opinion. Counsel explained that before their consultation, the medical examiner would review the available information and then either recommend hiring an expert for trial or assist trial counsel in continuing his own research, which counsel spent "many, many, many hours" conducting in this case. Through this research and consultation, trial counsel determined that there were several possible causes of Randy's death

that were more likely than drowning.[16] And after traveling to the GBI headquarters to interview the State's medical examiner regarding his findings and conclusions, trial counsel decided to prove that the doctor's conclusions were "hogwash" and to "destroy" him on cross-examination.[17] He planned to show on cross-examination that the facts the State's medical examiner alleged were incorrect and that, because his conclusions were based upon erroneous facts, they were not reliable.

At trial, counsel's cross-examination of the State's medical examiner was thorough and sifting. Trial counsel was able to obtain several concessions, including that Randy's blunt-force trauma

---

[16] Treadaway also proffered at the motion for new trial hearing the testimony of Dr. Jonathan Arden, an expert in the field of forensic pathology. Dr. Arden did not dispute the State's medical examiner's clinical findings, only his conclusions. Dr. Arden opined that (1) there was no physical or physiologic mechanism by which the blunt force trauma would have caused or contributed to Randy's death; (2) there was no evidence to establish drowning; and (3) Randy's manner of death was natural, caused by acute and chronic alcoholism. However, on cross-examination, Dr. Arden agreed that the manner of death would be unnatural when an injury hastens the death of someone already vulnerable to significant or life threatening disease.

[17] Trial counsel, who was the circuit's Public Defender at the time of trial, testified that, although the Georgia Public Defender Council was in "dire financial straits" at the time of Treadaway's trial, if he had required an expert, he would have found the resources to secure one.

injuries would not have been fatal in a healthy individual; that someone with underlying conditions resulting from chronic alcoholism could have died as a result of having a blood-alcohol level in excess of 0.4 grams, as Randy's was at the time of his death; and that another pathologist might list the blunt force trauma as a contributory factor rather than a second cause of death.

"Typically, the decision whether to present an expert witness is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." *Martin v. State*, 306 Ga. 747, 751 (3) (a) (833 SE2d 122) (2019) (citation and punctuation omitted). "A defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under similar circumstances, would have made it." *Davis v. State*, 306 Ga. 140, 148 (3) (g) (829 SE2d 321) (2019) (citation and punctuation omitted).

Here, "[t]rial counsel's extensive testimony on the subject indicates that he carefully considered the value an expert witness would bring to [Treadaway's] defense" and concluded that he would be able to sufficiently undercut the State's expert's conclusions on

cross-examination. *Martin*, 306 Ga. at 752 (3) (a). Under these circumstances, even if other attorneys might have chosen a different strategy, we cannot say that trial counsel's investigation and tactical judgment was outside the wide range of reasonably effective assistance. See *Matthews v. State*, 301 Ga. 286, 289 (2) (800 SE2d 533) (2017) (trial counsel's strategic decision to forgo hiring an expert witness in lieu of cross-examination and argument to advance the defense theory was not outside the broad range of professional conduct presumed to be reasonable); *Canada v. State*, 275 Ga, 131, 133 (2) (562 SE2d 508) (2002) (trial counsel's strategy of relying on cross-examination of State's expert, which elicited admissions that the victim's various health conditions could have possibly contributed to his sudden death, was not so patently unreasonable that no attorney would have chosen such a tactic).

(b) Treadaway also argues that trial counsel was ineffective in failing to request Pattern Charge 2.10.30 after the trial court denied her requested charge on proximate causation.

At the motion for new trial hearing, Treadaway's lead and

second-chair counsel testified that they selected jury charges to support their closing argument, which was that Randy would have died of other factors regardless of any blows that Treadaway inflicted upon him. Neither counsel could recall why the trial court chose to give a different charge on causation or why they did not ask for the pattern charge. However, we need not determine whether trial counsel's failure to request the pattern charge amounted to deficient performance because Treadaway cannot show *Strickland* prejudice. As we have concluded in Division 3 (a), because the trial court's charge as a whole was legally correct and adequately instructed the jury as to the principles of proximate cause relevant to this case, Treadaway cannot show a reasonable probability that her trial would have ended more favorably for her had trial counsel requested the pattern charge. See *Hood v. State*, 303 Ga. 420, 427 (2) (b) (811 SE2d 392) (2018) (as the trial court's charge adequately instructed the jury, appellant did not show a reasonable probability that the trial would have ended more favorably had counsel preserved his claims of instructional error).

Thus, we conclude that Treadaway's ineffective assistance of counsel claims fail and that the trial court properly denied Treadaway's motion for new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 2020.
Murder. Chattooga Superior Court. Before Judge Graham.

*Michael W. Tarleton*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Michael J. Moeller, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.