**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 13, 2023

# In the Court of Appeals of Georgia

A23A0580. DUNN v. DUNN.

BROWN, Judge.

We granted Danny Dunn's ("Husband") application for discretionary review of the trial court's final judgment and decree of divorce. On appeal, he argues that the trial court erred in (1) conducting a final hearing despite the parties only being noticed for a contempt hearing; (2) conducting a bench trial when Husband filed a timely demand for a jury trial; (3) adopting verbatim Caryn Dunn's ("Wife") proposed order, which contradicted the trial court's oral pronouncement and made a determination of marital assets without giving Husband an opportunity to reply; (4) failing to incorporate a permanent parenting plan into the divorce decree that fully complies with OCGA § 19-9-1; (5) using evidence of Husband's income established during a temporary hearing to calculate child support; (6) failing to include all

required schedules as required by OCGA § 19-6-15 (m); and (7) entering a final order that fails to resolve all "contestable issues." For the reasons explained below, we affirm in part, but we vacate the trial court's final order of divorce so that it may fully comply with OCGA § 19-9-1.

The record shows that in July 2019, Wife filed an action for divorce against Husband, seeking temporary and permanent custody of the parties' four minor children, as well as financial support and division of the parties' marital and personal property. Husband answered and counterclaimed for sole custody of the children, an award of child support, and equitable division of personal property and debt. Following a temporary hearing in August 2019, at which both parties appeared, the trial court awarded the parties joint legal and physical custody of the children, and found that Husband earns $5,047.66 per month and ordered him to pay $1,437 in monthly child support. Three months later, Wife filed a petition for contempt, as amended, alleging that Husband was in arrears on his child support payments. A hearing was set for January 9, 2020. On January 8, 2020, Husband answered the contempt petition and filed a counterclaim, alleging that Wife violated the trial court's temporary order in a number of ways, including disposing of certain marital assets and interfering with his personal mail. On March 3, 2020, Wife's counsel filed

2

a "Notice of Final Hearing," which provided that "Plaintiff will bring the above styled matter on for a Final Hearing on the 19th of March, 2020[.]" On March 5, 2020, Husband filed a demand for jury trial.

On March 7, 2020, nunc pro tunc to January 9, 2020, the trial court entered an order finding Husband in wilful contempt of the temporary order. On July 16, 2020, the trial court issued an order setting the case for "a hearing" on August 11, 2020. Upon agreement of counsel, that hearing date was cancelled and rescheduled by the court for September 14, 2020. On August 28, 2020, the September hearing date was continued by agreement of counsel and continued by order of the court until October 28, 2020, "**AT 9:00 AM** in the Superior Court of Dade County, Trenton, Georgia." On October 21, 2020, Husband filed an application for contempt, moving the trial court to find Wife in contempt and place her in jail. Accompanying this application was a notice of hearing which provided: "Notice is hereby given that [Husband] will bring on his Application for Contempt against [Wife] on the 28th day of October 2020, at 10:00 AM in the Superior Court for Dade County, Dade County Courthouse, Trenton, Georgia."

On October 28, 2020, the trial court held a bench trial during which both parties, three witnesses, and the guardian ad litem testified. On December 15, 2020,

the court entered a final judgment and decree of divorce granting the parties joint legal custody of their four children with Wife having primary physical custody and final say in the event of any dispute between the parties over any joint legal custody issue. The court found that Husband earns $5,048 per month and ordered him to pay $1,566 in monthly child support, noting that he was ordered to provide his most recent paycheck stub at the final hearing so that child support could be determined but that he had not "provide[d] the same, thus the [c]ourt will impute his income from the [t]emporary [o]rder." The court also awarded Wife sole ownership of the marital residence and ordered that all other real property be listed with a realtor and "sold in a commercially reasonable manner." As to the "other real property," the trial court noted that "[a]t the time of the hearing, [Husband] claimed that the real property was purchased in part with premarital funds. [Husband] was given the opportunity to provide the information to the [c]ourt. He has failed to do so[.] [F]or this reason, the [c]ourt finds that all interest in the real property was marital." Husband appeals from this final judgment.

1. Husband contends that the trial court erred in conducting a final hearing despite the parties only being noticed for a contempt hearing. We find no merit in this enumeration for several reasons.

4

First, by *agreement of counsel* and *order of the trial court*, the final hearing was scheduled for October 28, 2020, after the parties twice rescheduled it by agreement. Second, the contempt hearing was unilaterally noticed by Husband's counsel to coincide with the final hearing; it was not a court-ordered hearing notice. Third, Husband has neither stated nor shown where he objected to the trial court conducting a final hearing on October 28, 2020. See, e.g., *Facey v. Facey*, 281 Ga. 367, 368 (1) (638 SE2d 273) (2006). Quite the opposite, Husband appeared at the specially-set, agreed-upon date for the final hearing where his counsel questioned several witnesses, including Husband himself and the guardian ad litem. Moreover, during an exchange between Wife's counsel and Husband during the hearing, Husband acknowledged that he was appearing for a *final hearing*:

> Q: Sir, so you're in court for custody of these four children and your position is that she was hospitalized since the temporary order in this case for mental reasons and you had the EOB and you did not bring the EOB?
>
> A: Well, I mean, I gave it to the guardian ad litem, but I did not realize I could bring documents with me up here on the stand either.

5

Q: You have a whole table of documents sitting here, right? Are you telling this Court you didn't know you could bring documents to court? No.

A: I have never been through a divorce. I apologize.

Q: Well, you've been through court. You said earlier this is your third or fourth time in court, right?

A: Not for a final hearing.

Additionally, at the close of the evidence, Husband's counsel engaged in an exercise with the trial court and Wife's counsel wherein they went over a proposed list of personal items and divided them between the parties. Such conduct is inconsistent with one appearing solely to prosecute an application for contempt.

2. Husband contends that the trial court erred in conducting a bench trial when he filed a timely demand for a jury trial. We disagree.

OCGA § 19-5-1 (a) provides in pertinent part: "Unless an issuable defense is filed as provided by law and a jury trial is demanded in writing by either party on or before the call of the case for trial, in all petitions for divorce and permanent alimony the judge shall hear and determine all issues of law and of fact and any other issues raised in the pleadings."

6

When a party makes a timely demand for a jury trial, the trial court cannot proceed without a jury unless the parties consent to a bench trial by a written stipulation filed with the court or an oral stipulation made in open court and entered in the record. Of course, a party in a divorce case can, by [his] voluntary actions, impliedly waive a demand for a jury trial. A demand for a jury trial is impliedly waived where the party making the demand participates in a bench trial without objection.

(Citations omitted.) *Matthews v. Matthews*, 268 Ga. 863, 864 (2) (494 SE2d 325) (1998). See *Holloman v. Holloman*, 228 Ga. 246, 247 (1) (184 SE2d 653) (1971) (wife, who testified in hearing before trial court when divorce was granted, waived demand for jury trial).

Here, the record shows that Husband filed a written demand for a jury trial on March 5, 2020, before the case was called for trial and that he had an issuable defense. Husband contends that the trial court never "actually called the case for trial. Instead, the parties appeared for a duly noticed contempt hearing." Given our holding in Division 1, this enumeration is entirely without merit. Husband "in this case waived [his] right to a jury trial by [his] 'conduct' in participating in the bench trial and [his] 'silence' in failing to protest or object." *Goss v. Bayer*, 184 Ga. App. 730, 732 (2) (362 SE2d 768) (1987).

3. Husband contends that the trial court erred in adopting verbatim Wife's proposed order, which contradicted the trial court's oral pronouncement and made a determination of marital assets without giving Husband an opportunity to reply. We find this enumeration meritless.

At the conclusion of the final hearing on October 28, 2020, the trial court advised Husband that he could prove certain assets belonged to him even though he failed to do so during the hearing. During the motion for new trial hearing, Wife's counsel explained that on November 11, 2020, following the final hearing, he received an e-mail from Husband's counsel advising him that he had encouraged Husband to give him proof of income and any premarital asset information. A week later, Wife's counsel indicated to Husband's counsel that he was looking forward to receiving the information. Two days after that, Wife's counsel again asked for the information. On Wednesday, December 9, 2020, Wife's counsel sent an e-mail to Husband's counsel again inquiring about the documents, asking him to respond within six days, and attaching a proposed order. On December 10, 2020, Husband's counsel advised that he would not be able to provide feedback on the proposed order until the next week. By Thursday, December 15, 2020, Wife's counsel had not heard from Husband or his counsel. Accordingly, on December 15, 2020, he sent an e-mail

to the trial court explaining that Husband's counsel would not be able to provide feedback "until this week" and attached a proposed order. The trial court entered the proposed order on that date.

"It is well established in Georgia that a trial court may request and adopt a proposed order from either party. However, when a trial court requests a party to submit a proposed order, it should apprise the other party of the request and allow an opportunity to respond to any proposed findings and conclusions." (Citations omitted.) *Treadaway v. State*, 308 Ga. 882, 887 (2) (843 SE2d 784) (2020). "Even when a trial court adopts a proposed order verbatim, the findings of fact therein are those of the court and may be reversed only if they are clearly erroneous." *Fuller v. Fuller*, 279 Ga. 805, 806 (1) (621 SE2d 419) (2005). Here, Husband was given an opportunity to provide evidence after the hearing but chose to ignore Wife's counsel's repeated communications seeking such information. Additionally, Husband was provided with a copy of the proposed order six days before it was submitted to the trial court and elected not to reply; contrary to his contention, Husband was given every opportunity to reply to the proposed order.

Husband asserts that the trial court's acceptance of the findings proposed by Wife, without providing him an opportunity to respond, constitutes improper ex parte

communications. However, "even orders prepared ex parte do not violate due process and should not be vacated unless a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair." (Citation and punctuation omitted.) *Treadaway*, 308 Ga. at 888 (2). Given the Husband's inaction, as described above, he has not shown that the trial court's process was fundamentally unfair.

4. Husband contends that we must reverse the final order of divorce because the trial court erred in failing to incorporate a permanent parenting plan as required by OCGA § 19-9-1. We agree that the trial court erred in failing to incorporate a permanent parenting plan, but conclude that the proper remedy is to vacate the judgment and remand the case for compliance with the requirements of OCGA § 19-9-1.[1]

OCGA § 19-9-1 (a) provides that "[t]he final order in any legal action involving the custody of a child, including modification actions, shall incorporate a

---

[1] We note that Husband misrepresents our holding in *Pryce v. Pryce*, 359 Ga. App. 590 (859 SE2d 554) (2021). We did not reverse the trial court in that case for failure to comply with the requirements of OCGA § 19-9-1; we vacated its judgment and remanded the case for compliance with the requirements of the Code section. Id. at 593 (1). We caution Husband's counsel that misrepresenting governing caselaw is sanctionable conduct under our Rules and violates the Rules of Professional Conduct. See Ga. R. & Regs. St. Bar Rules of Professional Conduct, Rule 3.3 (a) (1). See also OCGA § 15-19-4 (2).

permanent parenting plan as further set forth in this Code section; provided, however, that unless otherwise ordered by the court, a separate court order exclusively devoted to a parenting plan shall not be required." Under OCGA § 19-9-1 (b) (1), unless otherwise ordered by the court, a parenting plan "shall include" the following:

(A) A recognition that a close and continuing parent-child relationship and continuity in the child's life will be in the child's best interest;

(B) A recognition that the child's needs will change and grow as the child matures and demonstrate that the parents will make an effort to parent that takes this issue into account so that future modifications to the parenting plan are minimized;

(C) A recognition that a parent with physical custody will make day-to-day decisions and emergency decisions while the child is residing with such parent; and

(D) That both parents will have access to all of the child's records and information, including, but not limited to, education, health, health insurance, extracurricular activities, and religious communications.

Under OCGA § 19-9-1 (b) (2), unless otherwise ordered by the court or agreed upon by the parties, the parenting plan "shall include, but not be limited to" the following: when the children will be in each parent's physical care; how holidays,

11

birthdays, and school breaks will be spent with each parent; transportation arrangements; whether supervision will be needed for parenting time; an allocation of decision-making authority with regard to education, health, extracurricular activities, and religious upbringing; and what, if any, limitations exist while one parent has physical custody of the children in terms of the other parent contacting the children and the other parent's right to access education, health, extracurricular activity, and religious information regarding the children. See *Pryce v. Pryce*, 359 Ga. App. 590, 592 (1) (859 SE2d 554) (2021). In this case, the divorce decree did not comply with the requirements of OCGA § 19-9-1 because it did not include any of the "recognitions" required by subparagraphs (A) through (D) of OCGA § 19-9-1 (b) (1). And, while the decree provided that Wife would have "final say in the event of any dispute between the parties over any joint legal custody issue," it did not include a recognition that the parent with physical custody will make day-to-day decisions and emergency decisions while the child is residing with such parent. See OCGA § 19-9-1 (b) (1) (C). The final order also failed to provide "[a]n allocation of decision-making authority to one or both of the parents with regard to the child[ren's] education, health, extracurricular activities, and religious upbringing, and if the parents agree the matters should be jointly decided, how to resolve a situation in

12

which the parents disagree on resolution" and "[w]hat, if any, limitations will exist while one parent has physical custody of the child[ren] in terms of the other parent contacting the child[ren] and the other parent's right to access education, health, extracurricular activity, and religious information regarding the child[ren]." OCGA § 19-19-1 (b) (2) (E), (b) (2) (F). Because the trial court did not include an adequate parenting plan in its final order of divorce, we vacate the judgment and remand this case for compliance with the requirements of OCGA § 19-9-1. See *Selvage v. Franklin*, 350 Ga. App. 353, 360 (4) (829 SE2d 402) (2019). See also *Pryce*, 359 Ga. App. at 593 (1).

5. Relying on *Pace v. Pace*, 287 Ga. 899, 901 (700 SE2d 571) (2010), and *Vaughn v. Davis*, 290 Ga. 351, 352 (720 SE2d 636) (2012), Husband contends that the trial court erred by relying on evidence of his income established during the temporary hearing to calculate his child support obligation in the final order. This enumeration is meritless.

The cases upon which Husband relies are inapplicable because they deal with a final custody decision and not the establishment of child support. Pursuant to OCGA § 19-6-15 (f) (4) (A), when establishing the amount of child support, the trial court is empowered to impute income "if a parent fails to produce reliable evidence

13

of income." Here, as discussed above, at the close of the final hearing, the trial court advised Husband and his counsel to provide "his first paycheck" because Husband had been terminated from his previous job and was beginning employment with a new company. Counsel agreed, but then Husband failed to provide the information despite repeated attempts by Wife's counsel to obtain it.[2] Accordingly, the trial court was authorized to rely on evidence of Husband's income established during the temporary hearing to calculate his child support obligation in the final order and this enumeration is without merit. See, e.g., *Franco v. Eagle*, 361 Ga. App. 506, 508-510 (1) (a) (864 SE2d 675) (2021) (rejecting husband's claim that trial court erred by imputing his monthly gross income where he failed to properly respond to wife's discovery requests).

6. Husband contends that the trial court committed reversible error by failing to include all required schedules that are to be attached to the child support worksheet

---

[2] We note that six months after the final order was entered, the parties appeared for a hearing, where counsel explained that the trial court incarcerated Husband for failing to provide information requested in the final order so that the qualified domestic relations order could be entered. Apparently, Husband had filed a financial affidavit indicating he had retirement assets of $125,000; the retirement statement sent to Wife's counsel so that Husband could "gain his freedom" from incarceration had "a substantial amount missing" because the account balance indicated an amount of $7,501.19.

as mandated by OCGA § 19-6-15 (m). In particular, Husband contends that "[t]he child support worksheet does not contain Schedule A, nor any Schedules."

> Generally, OCGA § 19-6-15 (m) (1) requires the trial court to attach to the final order the child support worksheets and any schedule that was prepared for the purpose of calculating the amount of child support. In addition to including the requisite findings of fact, the trial court must attach a completed child support worksheet and Schedule E to the child support order, incorporate those documents by reference into the order, *or enter the pertinent information from those documents directly into the order itself.*

(Citation and punctuation omitted; emphasis supplied.) *Daniel v. Daniel*, 358 Ga. App. 880, 884 (1) (a) (856 SE2d 452) (2021). In this case, the final order references the "Child Support Worksheet (Exhibit A, attached hereto)," and provides that Husband earns the gross approximate amount of $5,048 per month and orders him to pay $1,566 in child support per month at the weekly rate of $360. Additionally, the child support worksheet referenced in the final order was filed separately in the case, one minute after the final order was filed. And, while the child support worksheet notes that Schedule A is attached, there is no Schedule A attached. But given that the trial court entered Husband's gross income directly into its final order, the failure to attach Schedule A is not fatal. See id. at 885 (a). Cf. *Demmons v. Wilson-Demmons*,

15

293 Ga. 349, 349-350 (1) (745 SE2d 645) (2013) (noting that incorporating gross monthly income information from child support worksheet into final order through attachment or other method would have made remand unnecessary). While Husband contends that the trial court erred in failing to attach other schedules, the child support worksheet does not indicate that any other schedules are applicable and Husband does not explain in his brief what other schedules should have been attached and why. This enumeration therefore provides no basis for reversal.

7. Husband contends that because the final order did not resolve all "contested issues" it should be reversed. He also contends that the final order fails to make a ruling on his application for contempt filed on October 21, 2020. As to the latter argument, Husband never asked the trial court during the final hearing to consider his application for contempt; accordingly he has waived this issue on appeal. "It is well established that one cannot complain of a judgment, order, or ruling that [his] own procedure or conduct procured or aided in causing." (Citation and punctuation omitted.) *Timmons v. Cook*, 287 Ga. App. 712, 713 (1) (652 SE2d 604) (2007). See also *Saravia v. Mendoza*, 303 Ga. App. 758, 762 (1) (695 SE2d 47) (2010) (where husband acquiesced to the trial court's decision to hold a joint hearing on contempt motion and custody petition, he could not complain of this decision on appeal).

16

With regard to the former argument, Husband contends that the final order is incomplete in the following ways: (1) it states that "[i]f it is not possible to sell the timeshares, the parties can agree on a division between the two of them," but the parties may never agree upon a division of the timeshare; (2) it states that "[a]ll of the real property except for the marital residence shall be listed with a realtor and sold in a commercially reasonable manner," but there is not a description of the property to be sold; and (3) it does not resolve, or identify, Husband's separate real property interests.[3]

> In a bench trial, the court sits as the finder of fact and, as such, is charged with the responsibility of determining whether and to what extent a particular item is a marital or non-marital asset and then exercising its discretion and dividing the marital property equitably. The final judgment and decree of divorce entered in the case at bar contains the results of that process . . . . However, a superior court judge is not required to make findings of fact in a nonjury trial unless requested to do so by one of the parties prior to the entry of the written judgment, and neither party asked the trial court to make findings of fact. Inasmuch as the issues on appeal depend upon the factual determinations made by the

---

[3] A footnote in the final order provides that "[a]t the time of the hearing, [Husband] claimed that the real property was purchased in part with premarital funds. [Husband] was given the opportunity to provide the information to the [c]ourt. He has failed to do so[.] [F]or this reason, the [c]ourt finds that all the interest in the real property was marital."

17

trial court as factfinder and neither party asked the trial court to make factual findings, we are unable to conclude that the trial court's equitable distribution of marital property was improper as a matter of law or as a matter of fact.

(Citations and punctuation omitted.) *Messaadi v. Messaadi*, 282 Ga. 126, 128 (1) (646 SE2d 230) (2007). Accordingly, there is no merit in Husband's claim that the final order should be reversed because it fails to resolve all contested issues concerning the real property. See id. at 127 (1); *Russ v. Russ*, 272 Ga. 438, 440 (3) (530 SE2d 469) (2000). See also *Byrne v. Byrne*, 365 Ga. App. 240, 245-246 (5) (878 SE2d 95) (2022) (trial court did not commit reversible error by not including in final decree method by which the value of marital home would be determined). Moreover,

[i]t has long been the rule that title to property not described in a verdict or judgment is unaffected by the decree and remains titled in the name of the owners as before the decree was entered. The rule of law . . . is clear, [that] a divorce decree must specifically describe and dispose of property in which both parties have an interest or the decree will not divest either party of their interest in the property. This is true although title to the personal property of each is adjudicated, and although one party claims after the fact that certain real property not specifically described in the decree was meant to be included in the disposition of property.

18

(Citations and punctuation omitted.) *Newborn v. Clay*, 263 Ga. 622, 623 (436 SE2d 654) (1993). Based upon this rule of law, if appropriate upon remand, the trial court may wish to clarify what real property, apart from the marital residence, constitutes marital property and must be sold.

*Judgment affirmed in part and vacated in part, and case remanded with direction. McFadden, P. J., and Markle, J., concur.*

19