Harmony Rockaway, LLC v Gelwan (2021 NY Slip Op 06991)





Harmony Rockaway, LLC v Gelwan


2021 NY Slip Op 06991


Decided on December 15, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
REINALDO E. RIVERA
COLLEEN D. DUFFY
WILLIAM G. FORD, JJ.


2018-00503
2018-01843
 (Index No. 705563/15)

[*1]Harmony Rockaway, LLC, appellant,
v
Mark Gelwan, etc., et al., respondents (and a third-party action).


Jules A. Epstein, P.C., Uniondale, NY, for appellant.
Warren R. Graham, New York, NY, for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from (1) a decision of the Supreme Court, Queens County (Leonard Livote, J.), entered December 8, 2017, and (2) a judgment of the same court entered January 9, 2018. The judgment, insofar as appealed from, upon the decision, made after a nonjury trial, is in favor of the defendants and against the plaintiff dismissing the complaint and awarding the defendants damages on their second counterclaim in the principal sum of $300,000.
ORDERED that the appeal from the decision is dismissed, as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509); and it is further,
ORDERED that the judgment is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the respondents.
In 2013, the plaintiff entered into a lease agreement with the defendant Rockaways ASC Development, LLC (hereinafter ASC). Pursuant to the lease agreement, the plaintiff agreed to renovate and build out space in an abandoned courthouse in Rockaway Beach (hereinafter the subject premises) for the defendants' use as an ambulatory surgical center. The lease required the plaintiff to acquire title to the subject premises from the New York City Economic Development Corporation (hereinafter the EDC) by September 30, 2014 (hereinafter the acquisition deadline), and complete construction by an outside date of December 31, 2015. In the event the plaintiff failed to acquire title to the subject premises by the acquisition deadline, ASC had the right to cancel the lease as long as the reason for the plaintiff's default was not among those specified in section 23.01(a)(i) or (ii) of the lease.
In early 2014, the plaintiff discovered that the zoning regulations applicable to the subject premises did not permit the use intended pursuant to the lease as of right. The plaintiff and ASC discussed the matter and committed to satisfying their obligations under the lease, but as time passed without resolution of the zoning issue their relationship soured. The plaintiff ultimately resolved the zoning problem but failed to acquire title by the acquisition deadline. The parties met [*2]after the acquisition deadline, but were unable to resolve their differences. The defendants then entered into an agreement in February 2015 with a third party to operate an ambulatory surgical center at an alternative site in Rockaway. The plaintiff acquired title to the subject premises in March 2015. By letter dated May 3, 2015, ASC cancelled the lease.
The plaintiff thereafter commenced this action, inter alia, to recover damages for breach of contract against ASC, and the remaining defendants as guarantors of ASC. The defendants counterclaimed, among other things, to recover damages for breach of contract allegedly owed to them upon their cancellation of the lease in accordance with section 23.01 (hereinafter second counterclaim). After a nonjury trial, in a decision entered December 8, 2017, the Supreme Court, inter alia, found in favor of the defendants and against the plaintiff on the complaint and the second counterclaim. The court subsequently entered judgment on January 9, 2018, among other things, in favor of the defendants and against the plaintiff dismissing the complaint and awarding the defendants damages on their second counterclaim in the principal sum of $300,000. The plaintiff appeals. We affirm.
In reviewing a determination made after a nonjury trial, this Court's authority is as broad as that of the trial court, and it may render the judgment it finds warranted by the facts, taking into consideration that in a close case the trial court had the advantage of seeing and hearing the witnesses (see Baba-Ali v State of New York, 19 NY3d 627, 640; Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499). Nevertheless, "'[w]here the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations'" (Cathedral Props. Corp. v Cathedral Ct. Assoc., L.P., 177 AD3d 843, 848, quoting Bennett v Atomic Prods. Corp., 132 AD3d 928, 930).
The "'fundamental, neutral precept of contract interpretation . . . [is] that agreements are construed in accord with the parties' intent,' and '[t]he best evidence of what parties to a written agreement intend is what they say in their writing'" (Deutsche Bank Natl. Trust Co. v Barclays Bank PLC, 34 NY3d 327, 340, quoting 2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d 372, 377 [internal quotations omitted]). A court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations (see Gilbane Bldg. Co./TDX Constr. Corp. v St. Paul Fire & Mar. Ins. Co., 31 NY3d 131, 135). "'[W]here the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole'" (Tomhannock, LLC v Roustabout Resources, LLC, 33 NY3d 1080, 1082, quoting Ellington v EMI Music, Inc., 24 NY3d 239, 244).
Here, the evidence adduced at trial supported the Supreme Court's finding that the plaintiff, not the defendants, breached the contract. In particular, the testimony of the plaintiff's principal established that the reason the EDC provided for refusing to close title with the plaintiff by the acquisition deadline was not among the reasons specified in section 23.01(a)(i) or (ii) of the lease as negating the defendants' right to cancel. As there is no dispute that the plaintiff failed to acquire title to the subject premises by the acquisition deadline, the defendants had the right to cancel the lease. The plaintiff's contentions that its untimely acquisition of title extinguished the defendants' right to cancel or that the defendants failed to exercise their right of cancellation in the proper manner are belied by the plain language of the lease. The plaintiff also failed to identify any "'positive and unequivocal'" expression of an intention not to perform by the defendants to establish an anticipatory repudiation of the lease (Central Park Capital Group, LLC v Machin, 189 AD3d 984, 986, quoting Princes Point LLC v Muss Dev. L.L.C., 30 NY3d 127, 133 [internal quotation marks omitted]).
The Supreme Court also properly dismissed the plaintiff's cause of action for specific performance of the noncompete clause of the lease as academic, as the plaintiff's right to such relief expired under the terms of the lease prior to the trial.
The plaintiff's remaining contentions are without merit.
LASALLE, P.J., RIVERA, DUFFY and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court