**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 24, 2025

# In the Court of Appeals of Georgia

A25A0112. GILA, LLC v. KAPSCH TRAFFICCOM USA, INC.

DAVIS, Judge.

This appeal involves a dispute between a contractor and a subcontractor over which entity is responsible for the fallout of a project to collect tolls from a bridge over the Ohio River. After a class action was settled alleging that the tolls were not properly collected from motorists, Kapsch Trafficcom USA, the main contractor, brought this breach of contract suit against Gila, LLC, the subcontractor, seeking damages for breach of contract and for Gila's failure to indemnify and defend Kapsch from the class action as well as declaratory relief concerning the parties' rights and duties under the contract. The trial court denied summary judgment on the breach of contract

action but granted summary judgment to Kapsch on its claims for failure to indemnify and declaratory relief as well as Gila's counterclaims, and Gila now appeals.

Gila raises a host of alleged issues with the trial court's rulings, challenging the trial court's conclusions on the breach of contract claim, the failure to indemnify claim, the declaratory relief claim, and the dismissal of its counterclaims. We agree with Gila that Kapsch cannot recover the costs incurred by its insurer as part of its breach of indemnity claim and that the trial court erred when it declared that Gila is obligated to reimburse Kapsch for its costs of defending the class action to date, but we conclude that none of Gila's other arguments are meritorious, and so we affirm the trial court's summary judgment order in remaining part.

"On appeal from a grant of summary judgment, we review legal questions de novo and review the evidence in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact." (Citation omitted.) *Power v. Toccoa Dreams, LLC*, 367 Ga. App. 116, 117 (1) (885 SE2d 82) (2023).

So viewed, the record shows that the states of Indiana and Kentucky contracted with Kapsch to install and operate an electronic toll-collection system called RiverLink for toll bridges over the Ohio River. The RiverLink system was designed to use

2

cameras to photograph license plates of cars and then either bill the driver from a prepaid account or send invoices to drivers using information from state motor vehicle departments. Drivers were supposed to receive a regular invoice within a certain amount of time of driving over the bridge, and then the system would send a second notice with a late fee assessed if they did not respond within 30 days of the first invoice. In turn, Kapsch subcontracted with Gila to develop and operate the "back office system" to deliver invoices to drivers. According to the subcontractor agreement, Gila was responsible for generating and sending drivers notices about fees, and Gila itself used a subcontractor, RevSpring, to print and mail notices and invoices.

Problems soon arose with the RiverLink invoicing system. Many drivers were never mailed a first toll notice. Indeed, the first notice that many drivers received was a late notice for failing to respond to the first toll notice (that was never sent). Two class actions ensued against Kapsch and Gila over the billing issues, which were later consolidated. Seeking to enforce the indemnity provisions of the subcontractor agreement, Kapsch demanded that Gila defend and/or indemnify Kapsch, but Gila refused. Kapsch eventually settled the suit, with Kapsch's insurer paying out to the class members after Kapsch paid a $100,000 deductible, although the class action is

apparently still pending. Kapsch's insurer initially paid Kapsch's attorney fees for the class action, but it stopped doing so in May 2023, and Kapsch has paid its own fees since then.

Kapsch filed the instant complaint against Gila. Count I of the complaint alleged that Gila failed to adequately perform its obligations under the subcontractor agreement to handle the RiverLink system and did not complete the scope of the work required under the agreement. Count II alleged that Gila breached its duty under the subcontractor agreement to defend it from any claims arising out of the scope of Gila's work and to indemnify Kapsch for any losses it sustained arising out of Gila's work. Count III sought a declaratory judgment that Gila was obligated to indemnify and reimburse Kapsch for any costs and liability associated with the class action. In response, Gila denied Kapsch's allegations and counterclaimed to obtain certain payments that were withheld by Kapsch, and it also filed a claim for an accounting and an anticipatory repudiation based on the unmade payments.

Gila moved for summary judgment on all of Kapsch's claims, while Kapsch moved for partial summary judgment on its indemnification and declaratory judgment claims as well as Gila's counterclaims. Following a hearing, the trial court granted

4

Kapsch's motion for summary judgment, and it denied Gila's motion for summary judgment. The trial court denied Gila's motion for summary judgment on Kapsch's breach of contract claim, concluding that the claim "is rife with factual issues that are not appropriate for resolution on summary judgment." As for Kapsch's breach of the indemnity provision claim, the trial court granted summary judgment to Kapsch on the issue of liability, leaving the issue of damages to be determined later. The trial court similarly granted summary judgment to Kapsch on its declaratory judgment claim, declaring that Gila had the duty to defend and indemnify Kapsch for any expenses incurred due to the class actions. Finally, the trial court dismissed Gila's counterclaims, concluding that they failed as a matter of law for multiple reasons. In summary, the trial court found in favor of Kapsch as to liability on its claims for failure to indemnify and for a declaratory judgment, and it dismissed Gila's counterclaims, but it concluded that factual issues remained that precluded summary judgment on Kapsch's breach of contract claim. This appeal followed.

1. We will first address Gila's argument that Kapsch's entire lawsuit should be dismissed because of Kapsch's failure to follow the mandatory alternative dispute resolution ("ADR") provisions of the subcontractor agreement. Relatedly, Gila

argues that the trial court erred by determining that its counterclaims were barred because it failed to comply with the same ADR provisions. Reviewing the plain language of the subcontractor agreement, we conclude that the trial court correctly construed the ADR provisions such that Kapsch's claims are exempted from the provisions, but Gila's counterclaims are not.

"Like Georgia, New York law[1] provides that contract interpretation is a question of law[.]" (Citation omitted.) *GAPIII, Inc. v. Seal Indus., Inc.*, 338 Ga. App. 101, 111 (2) (a) (789 SE2d 321) (2016) (physical precedent only). Under New York law,

> [t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent, and the best evidence of what parties to a written agreement intend is what they say in their writing. A court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations. Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole.

---

[1] Because the subcontractor agreement stated that New York law applied, the trial court applied New York contract law in its summary judgment order, and we will also apply substantive New York contract law to resolve this appeal.

(Citations and punctuation omitted.) *Harmony Rockaway, LLC v. Gelwan*, 160 NYS3d 294, 296 (200 AD3d 863) (2021).

> Thus, a contractual provision that is clear on its face must be enforced according to the plain meaning of its terms. This rule applies with even greater force in commercial contracts negotiated at arm's length by sophisticated, counseled businesspeople. In addition, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.

(Citation and punctuation omitted.) *GAPIII, Inc.*, supra, 338 Ga. App. at 111 (2) (a).

> Under the subcontractor agreement,

> [i]f a dispute between the Parties arises out of or relates to this Subcontract Agreement, and such dispute does not involve claims made by or asserted against third parties, and if the dispute cannot be settled through negotiation in good faith between the Project Director and the Project Manager, the Parties agree to try in good faith to settle the dispute through the dispute resolution procedures set forth in Section 19 [of the prime contract between Kapsch and the States].

The prime contract provided that most disputes under the contract, including disputes involving a subcontractor, must be informally or formally resolved through

notice, meetings and negotiations, mediation, and other specified methods as a condition precedent to bringing suit.[2]

(a) The trial court concluded that the ADR provisions did not apply to Kapsch's claims against Gila because of the clause in the subcontractor agreement exempting disputes that "involve claims made by or asserted against third parties." Gila argues that this clause does not apply because the instant lawsuit only involves claims based on the subcontractor agreement and because third parties are neither present nor required to be joined to resolve the claims in this lawsuit.

However, the language in the subcontract agreement very broadly exempts any claims that "involve" claims made by third parties from the ADR provisions. See *Allied-Bruce Terminix Co. v. Dobson*, 513 U. S. 265, 273-274 (III) (115 SCt 834, 130 LE2d 753) (1995) (noting that the word "involving" is broad and can be defined as "to include or affect in operation") (citation omitted). Kapsch's breach of the indemnification clause claim and its declaratory judgment claim clearly "involve" the class action claims brought by third parties because Kapsch alleged that Gila failed to

---

[2] The parties have not directed us to evidence showing that either Kapsch or Gila invoked or followed these ADR methods before filing their claims in the instant lawsuit.

indemnify it from the third party class action claims. Kapsch's breach of contract claim also "involves" the third party class action claims because it alleged that it sustained damages from the alleged defects in Gila's performance due to the claims brought by third parties. We conclude that the trial court correctly determined that Kapsch's claims "involve claims made by or asserted against third parties" and that the ADR provisions therefore did not apply to Kapsch's claims.

(b) Relatedly, Gila argues that it was inherently unfair for the trial court to rule that its claims were subject to the subcontractor agreement's ADR provision but Kapsch's claims were not. As noted above, the ADR provision had an exception for issues "arising out of claims made by third parties." Because Kapsch's claims were at least partly based on the class action brought by third parties, this exception applied to Kapsch's claims. Gila's claims, however, are not based on any action brought by third parties but were simply attempts to recover alleged missed payments by Kapsch. The existence of the third-party class action claims are entirely immaterial to Gila's counterclaims, and so this exception cannot be said to apply to Gila's claims. Accordingly, the trial court did not err in concluding that Gila's counterclaims were due to be dismissed for its failure to comply with the ADR provisions. See *Archstone*

*Dev. LLC v. Renval Constr. LLC*, 67 NYS3d 7, 8 (156 AD3d 432) (2017) (affirming dismissal of breach of contract claim on the ground that the plaintiff failed to comply with a mandatory mediation provision).

2. Gila argues that the trial court erred by denying summary judgment on Kapsch's breach of contract claim, raising numerous arguments that Kapsch's breach of contract claim should fail as a matter of law. We ultimately reject all of Gila's contentions and affirm the denial of summary judgment on this claim.

(a) Gila's primary argument on Kapsch's breach of contract claim is that Kapsch's claim for failure to perform is barred by the "voluntary payment" doctrine. The voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 NY2d 525, 526 (790 NE2d 1155) (2003). "The onus is on a party that receives what it perceives as an improper demand for money to take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." (Citation and punctuation omitted.) *Beltway 7 & Properties, Ltd. v. Blackrock Realty Advisers, Inc.*, 90 NYS3d 3, 6 (167 AD3d 100) (1st Div. 2018).

Gila argues that Kapsch voluntarily paid Gila for its work well after it discovered the problems with Gila's performance, and so it is barred from recovering those payments. Gila argues that the trial court improperly rejected the application of the doctrine because it improperly made a factual finding that Kapsch was unaware of the extent of Gila's failures when it made those payments. However, Gila fails to address the trial court's main holding that the voluntary payment doctrine does not apply because Kapsch explicitly reserved its rights in the subcontractor agreement. Specifically, the subcontractor agreement provided that "[n]o payment made hereunder by [Kapsch] shall be construed to be acceptance or approval of that part of the Scope of Work to which such payment relates or to relieve [Gila] of any of its obligations hereunder" and that "[n]o payment by Kapsch shall be deemed a waiver by [Kapsch] of any obligation of [Gila] under this Subcontract Agreement." "[T]he effects of the [voluntary payment] doctrine can be overcome by a timely protest. However, the party that made the payment must give some indication that it took steps to indicate that it was reserving its rights." (Citation and punctuation omitted.) *Beltway 7 & Properties, Ltd.*, supra, 90 NYS3d at 6. Because Gila does not address the trial court's holding that the voluntary payment doctrine does not apply because of

11

Kapsch's reservation of rights, we must affirm the trial court's conclusion that the voluntary payment doctrine did not bar Kapsch's breach of contract claim.

(b) Gila next argues that Kapsch's breach of contract claim fails because Kapsch did not provide it notice and an opportunity to cure any defects in its performance. Gila points to the subcontractor agreement's definition of a "subcontractor event of default," which it argues provided it with the right to notice of any defects in its performance.

The relevant provision in the agreement sets out that Gila shall be in default of its obligations "upon the occurrence of *any one or more events of default* below:

- Failure of the Subcontractor to comply with any of its obligations under this Subcontract Agreement; . . .

- Subcontractor fails to perform or observe in any respect any provision of this Subcontract Agreement Agreement not otherwise addressed in this [Section], and such failure continues for fifteen (15) calendar days . . . after Subcontractor receives a Notice from [Kapsch] with respect thereto; and

- Subcontractor is responsible for the occurrence of a default as provided by the Contract with respect to the Scope of Work."

(Emphasis supplied.)

As the trial court correctly noted, this default provision only provided a right of notice under the catch-all default provision, but Kapsch's breach of contract claim is based on allegations that Gila failed to comply with its obligations under its scope of work to implement the RiverLink system, and no notice or cure provision is listed for that particular type of default. Additionally, as the trial court correctly noted, the remedies provision of the subcontractor agreement only gave Gila the right to notice and cure if Kapsch decided to terminate the subcontractor agreement, which has not happened. Accordingly, because the subcontractor agreement did not give Gila the right to notice and cure, this argument is without merit.

(c) Gila additionally argues that the trial court made many improper factual findings in the course of its summary judgment order, particularly noting that the trial court appeared to have conclusively determined the amount of damages and that Gila was in default under the contract. While Gila points to many statements made by the trial court in addressing the breach of contract claim, the trial court was very clear that the claim "is rife with factual issues that are not appropriate for resolution on summary judgment." We do not read the trial court's order as conclusively

establishing that Gila was either in default or responsible for the RiverLink problems. Additionally, the damages calculation to which Gila points was merely the trial court noting as part of the fact section of its order that "Kapsch designated evidence" that it incurred certain damages and that "Kapsch incurred attorney fees." We do not read this language as establishing a conclusive fact finding that these were the exact amount of damages that Kapsch was entitled to, and so we cannot agree that the trial court applied the wrong legal standard when handling the parties' summary judgment motions.[3]

---

[3] In its brief, Gila in passing appears to take issue with the fact that the trial court adopted Kapsch's proposed order without a single change, a point that was repeated by Gila's counsel at oral argument. "It is well established in Georgia that a trial court may request and adopt a proposed order from either party." (Citations omitted.) *Treadaway v. State*, 308 Ga. 882, 887 (2) (843 SE2d 784) (2020). While trial courts should of course use caution when adopting proposed orders by parties in full, see *Anderson v. City of Bessemer City*, 470 U. S. 564, 572 (II) (105 SCt 1504, 84 LE2d 518) (1985) (noting "the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor" and cautioning courts concerning the "verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record"), both parties presented the trial court with proposed orders following a long hearing with zealous advocacy from both sides, and so the trial court "in this case does not appear to have uncritically accepted findings prepared without judicial guidance by the prevailing party." (Citation omitted.) *Fuller v. Fuller*, 279 Ga. 805, 807 (1) (621 SE2d 419) (2005).

(d) Finally, Gila argues that the trial court "effectively granted summary judgment" to Kapsch on its breach of contract claim. While the trial court rejected many of Gila's defenses as a matter of law, it did not grant summary judgment to Kapsch, explicitly or implicitly, as it instead ruled that many disputed issues of fact needed to be addressed by a factfinder. Accordingly, we affirm the trial court's denial of summary judgment on Kapsch's breach of contract claim.

3. Gila next argues that the trial court erred by granting summary judgment to Kapsch on Kapsch's claim that it failed to indemnify Kapsch for its expenses defending the class actions. While we affirm the trial court's grant of summary judgment as to liability, we reverse its holding as to the scope of Kapsch's potential damages because we conclude that Kapsch can only recover damages that it actually incurred and not damages incurred by its insurer in defending the class action.

(a) Gila first argues that the trial court erred in concluding that it had a duty to indemnify and defend Kapsch for the entirety of the two class actions and not just for portions that were Gila's responsibility. Gila strenuously argues that the actual extent to which each party was responsible for the RiverLink problems is strongly contested

with conflicting evidence supporting both sides. In support of this argument, Gila points to an indemnification provision in the contract which states that

> *[E]xcept for matters expressly made [Kapsch]'s responsibility hereunder . . .* , [Gila] shall defend, indemnify, and hold harmless [Kapsch] against any and all Losses that directly or indirectly [a]rise out of or result from the prosecution of the Scope of Work by [Gila] (including its subcontractors and vendors) regardless of whether or not the Losses are caused wholly, or in part, by any acts or omissions of [Gila.]"

(Emphasis supplied.)

However, as the trial court noted, the subcontractor agreement contains *three* separate indemnification provisions, and only the provision listed above provides an exception for actions deemed to be "Kapsch's responsibility." One provision instead states that "[Gila] shall defend, indemnify, and hold and save [Kapsch] harmless from any and all liability, damages and other Losses of any kind, including but not limited to any third party claims, to the extent arising from or relating to [Gila's] negligent performance or non-performance of its obligations under this Subcontract Agreement." The other provision stated that "[Gila] shall defend, indemnify and hold [Kapsch] harmless for any and all Losses arising out of or related to the failure of [Gila's] subcontractors and vendors . . . to comply with their obligations hereunder."

16

Gila does not meaningfully address the trial court's conclusion that these other indemnification provisions applied. Based on the trial court's conclusion that Gila was required to defend and/or indemnify Kapsch under all three provisions, the trial court was not required to separate out what was Gila's responsibility and what was Kapsch's responsibility to determine whether Gila was required to indemnify and defend Kapsch.

(b) Gila's most forceful argument on the failure to indemnify claim is that Kapsch has failed to show that it was actually harmed and suffered damages due to Gila's failure to indemnify because Kapsch's insurer covered Kapsch's defense for the class action suits. In particular, Gila argues strenuously that Kapsch cannot recover for costs incurred by its insurer in defending it. We agree that Kapsch cannot recover for costs incurred by its insurer because Kapsch did not actually incur those damages.

The parties' dispute on this front centers around a New York case, *Inchaustegui v. 666 5th Avenue Ltd. Partnership*, 96 NY2d 111 (749 NE2d 196) (2001). In *Inchaustegui*, the New York Court of Appeals considered the application of the collateral source rule, which provides that "a personal injury award may not be

reduced or offset by the amount of any compensation that the injured person may receive from a source other than the tortfeasor[.]" (Citations omitted.) Id. at 115 (2). The Court concluded that a party who seeks damages for breach of an agreement to procure insurance and yet has other insurance available which covers the loss is limited to recovering the cost of obtaining and maintaining such substitute coverage and that the party cannot recover the costs incurred by the available insurer. Id. at 115-116 (2). The court concluded that the collateral source rule did not apply and that the insurance recovery could reduce the damages award because "the common-law collateral source rule is inherently a tort concept" and "has a punitive dimension that does not comport with contract law." Id. at 116 (2). The Court noted that "[c]ontract damages, unlike tort damages, are limited to the economic injury caused by the breach." Id. For its part, Kapsch points to a separate case, *Am. Ref-Fuel Co. of Hempstead v. Resource Recycling, Inc.*, 763 NYS2d 657, 660 (307 AD2d 939) (2003), where a New York court concluded that *Inchaustegi*'s rule did not apply in the context of a subrogation action brought by insurer seeking to recover legal expenses pursuant to an indemnification provision in a subcontract between the insured and a subcontractor.

18

In this situation, however, we find the reasoning of *Inchaustegi* to be controlling and that *Am. Ref-Fuel Co.* is readily distinguishable. As the Court of Appeals concluded in *Inchaustegi*, "[c]ontract damages, unlike tort damages, are limited to the economic injury caused by the breach[,]" id. at 115-116 (2), and so the collateral source rule does not apply to breach of contract actions. Thus, since this is a breach of contract action, Kapsch is limited to the actual damages that it sustained due to Gila's breach, which does not include any damages that were mitigated due to Kapsch obtaining assistance from its insurance carrier. *Am. Ref-Fuel Co.* involved an action brought by the insurance carrier itself, and so naturally it could seek the damages that it paid out to the insured since those were damages that the insurance carrier actually incurred. See *Am. Ref-Fuel Co. of Hempstead*, supra, 763 NYS2d at 660. Here, by contrast, Kapsch did not actually pay the costs that its insurer incurred while defending it.

Thus, the trial court incorrectly concluded that Kapsch can recover the costs that its insurer incurred while defending it from the class actions. Kapsch is nevertheless clearly entitled to recover its own out-of-pocket expenses caused by the

failure to indemnify, such as attorney fees it paid itself or the $100,000 deductible it paid to its insurer. See *Inchaustegui,* supra, 96 NY2d at 115-116 (2).

(c) Gila also takes issue with the trial court's ruling that its settlement agreement with the class action plaintiffs was inadmissible on the basis that it was irrelevant. We discern no abuse of discretion in the trial court's ruling.

"Admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation omitted.) *Health Svcs. of Central Ga., Inc. v. Wanna*, 373 Ga. App. 642, 654 (2) (908 SE2d 41) (2024). The admissibility of evidence for the purposes of summary judgment "is governed by the rules relating to form and admissibility of evidence generally." (Citation omitted.) *Patrick Malloy Communities, LLC v. Community & Southern Bank*, 334 Ga. App. 76, 80 (1) (778 SE2d 242) (2015). "Evidence which is not relevant shall not be admissible." OCGA § 24-4-402. "[R]elevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401.

Gila argues that the settlement was relevant to establish what was its "responsibility" and what was "Kapsch's responsibility." As noted above, however, it is not necessary to parse out who is responsible for what to determine whether the indemnity provisions applied – under the subcontractor agreement, Gila was responsible to indemnify Kapsch and assume Kapsch's defense for any claims arising out of Gila's scope of work regardless of who was ultimately responsible for the claim. The trial court did not abuse its discretion by excluding the settlement agreement from evidence on the basis that it was irrelevant.

4. Gila relatedly argues that the trial court erred in granting summary judgment on Kapsch's declaratory judgment claim concerning Gila's duty to defend and indemnify Kapsch. Gila primarily argues that the trial court's declaratory relief is improper because it is on the one hand too "backward looking" in that it ruled that Gila must reimburse Kapsch for damages already incurred. We agree.

> The State Declaratory Judgment Act gives superior courts the power to declare rights and other legal relations of any interested party in cases of actual controversy under OCGA § 9-4-2 (a) and in any civil case in which it appears to the court that the ends of justice require that the declaration should be made. OCGA § 9-4-2 (b). Such relief is authorized when there are circumstances showing a necessity for a

21

determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest. The proper scope of declaratory judgment is to adjudge those rights among parties upon which their future conduct depends.

(Citations and punctuation omitted.) *GeorgiaCarry.Org v. Atlanta Botanical Garden, Inc.*, 299 Ga. 26, 28 (1) (785 SE2d 874) (2016).

[I]t is axiomatic that damages may not be recovered in a declaratory judgment action. The legislative intent and purpose of our Declaratory Judgment Act is to relieve against uncertainty and insecurity; to declare rights, status, and legal relations, but not to execute remedies or grant coercive relief. Consequently a judgment for damages may not be recovered in a declaratory action.

(Citations and punctuation omitted.) *Southern Heritage Ins. Co. v. Green Ins. Agency*, 249 Ga. App. 749, 750 (1) (549 SE2d 743) (2001).

When granting summary judgment, the trial court declared that, under the contract, "(i) Gila is obligated to indemnify Kapsch for any and all liability, damages, and losses incurred in connection with the Class Action Cases; (ii) Gila is obligated to reimburse Kapsch for its costs of defending the Class Action Cases to date; and (iii)

Gila is obligated to indemnify and assume any and all future costs of Kapsch's defense of the Class Action Cases."[4] The trial court erred by including declaratory relief that Gila was "obligated to reimburse Kapsch for its costs of defending the Class Action Cases to date" because that is a determination that Kapsch is entitled to damages due to Gila's past breach of the indemnification provisions, which is not proper declaratory relief. See *Southern Heritage Ins. Co. v. Green Ins. Agency*, supra, 249 Ga. App. at 750-751 (1) (plaintiff who sought indemnification from an agent and damages failed to state a claim for declaratory relief). Accordingly, we reverse the trial court's grant of declaratory relief to the extent that it declared that Gila is obligated to reimburse Kapsch for its costs of defending the class action to date.

5. Finally, Gila challenges the trial court's grant of summary judgment on its counterclaims on numerous grounds. As we concluded above in Division 1, the trial court did not err in concluding that Gila's counterclaims were barred because of its failure to meet the conditions of the ADR provisions of the subcontractor agreement.

---

[4] Gila also argues that the declaratory relief that Gila must defend Kapsch in the future regardless of what hypothetical claims a party may raise in the future is too broad and unenforceable. The trial court's ruling, however, is limited to the class action, and the indemnification provisions in the contract speak for themselves, and so we reject this argument.

Because that finding alone is sufficient to dispose of Gila's counterclaims, we do not reach its other claims of error concerning the counterclaims.

Accordingly, we reverse the trial court's summary judgment order to the extent that it declared that Gila is obligated to reimburse Kapsch for its costs of defending the class action to date and ordered that Kapsch can recover the costs incurred by its insurer as part of its breach of indemnity claim, but we affirm the trial court's summary judgment order in remaining part.

*Judgment affirmed in part and reversed in part. Rickman, P. J., and Gobeil, J., concur.*